483 So.2d 415 (1986)
MICROTEL, INC., Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
GTE SPRINT COMMUNICATIONS CORPORATION, Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
MCI TELECOMMUNICATIONS CORPORATION, Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
Nos. 66125, 66403 and 66404.
Supreme Court of Florida.
February 6, 1986.
*416 Patrick K. Wiggins, of Ranson & Wiggins, Tallahassee, for Microtel, Inc.
Robert Peak, of Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, and Bruce W. Renard, of Messer, Vickers, Caparello, French & Madsden, Tallahassee, for GTE Sprint Communications Corp.
Robert J. McKee, Jr., Atlanta, Ga., and John K. Aurell, John P. Fons and Robert L. Hinkle, of Aurell, Fons, Radey & Hinkle, Tallahassee, for AT & T Communications of the Southern States, Inc.
Richard D. Melson, of Hopping, Boyd, Green & Sams, Tallahassee, for MCI Telecommunications Corp.
William S. Bilenky, Gen. Counsel and Susan F. Clark, Deputy Gen. Counsel, Tallahassee, for Florida Public Service Commission.
James V. Carideo, Leslie R. Stein, Lorin H. Albeck and Thomas R. Parker, Tampa, for Gen. Telephone Co. of Florida.
Jerry M. Johns, Gen. Counsel, Altamonte Springs, for United Telephone Co. of Florida.
William B. Barfield, Miami, and William H. Adams, III, and Robert J. Winicki, Jacksonville, for Southern Bell Tel. & Tel. Co.
SHAW, Justice.
This cause is before us to review Public Service Commission (PSC) order no. 13750 of October 5, 1984, and order no. 13912 of December 11, 1984. Both orders relate to utilities providing long distance telephone service within the state. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.; § 350.128, Fla. Stat. (1983).
Some background is helpful in understanding the issues posed by these consolidated cases. Until very recently telephone service in the nation and Florida was largely provided on a monopoly basis. This was radically changed nationwide by the entry of the judgment in United States v. American Telephone and Telegraph Co., 552 F. Supp. 131 (D.D.C. 1982), aff'd sub nom. Maryland v. United States, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), as subsequently modified by United States v. Western Electric Co., 569 F. Supp. 990 (D.D.C. 1983) (Western Electric I), and United States v. Western Electric Co., 569 F. Supp. 1057 (D.D.C.), aff'd sub nom, California *417 v. United States, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983) (Western Electric II). Broadly, this modified final judgment (MFJ) reorganized AT & T and divested its local telephone companies, restricted the operating areas of local telephone companies, and provided for competitive interstate long distance telephone services. Among the specific features of the AT & T reorganization plan contained in the MFJ pertinent to this case are the following:
1) The former AT & T subsidiaries (Bell Operating Companies) became independent of the reorganized AT & T under a regional holding company, Southern Bell. After the divestiture date, these companies were to deal with AT & T on an arms-length basis and offer any AT & T competitors equal access to local exchange facilities and customers.
2) Nationwide, the former Bell territories were divided into geographically-based Local Access and Transport Areas (LATAs). These LATAs mark the boundary beyond which a Bell Operating Company (BOC) may not carry telephone calls. Inter-LATA calling service is provided on a competitive basis by Interexchange Carriers (IXCs), such as AT & T, Microtel, Inc., GTE Sprint, and MCI. Although the BOCs are limited to service within a LATA, the size of the LATAs require that BOCs provide short-haul long distance service within each LATA. Thus, intra-LATA calls include both toll and non-toll calls.
3) In Florida, the MFJ established seven LATAs.[1] Of these seven, five were centered on a single Standard Metropolitan Statistical Area (SMSA) and were uncontroverted: Daytona Beach, Gainesville, Jacksonville, Panama City, and Pensacola. Two, however, contained more than one SMSA and were controverted: the Southeast LATA from Ft. Pierce southward to Key West encompassing West Palm Beach, Ft. Lauderdale and Miami, and the Orlando LATA which also contained the Melbourne-Cocoa-Titusville SMSA. The federal court was concerned that the large size of the two controverted LATAs would potentially reduce competition but approved them for a variety of reasons: further division would require large installation costs for new access switches; failure to consolidate the geographic areas would entail rate increases; and, the state regulatory body, PSC, was a strong body committed to promoting intra-LATA competition.
In Florida the authority for monopoly telephone service was section 364.335(4), Florida Statutes (1981), which severely limited the authority of PSC to issue certificates of telephone service to telephone companies. Broadly, PSC could not issue such certificates if the proposed service competed with, or duplicated, existing services provided by any telephone company unless the existing facilities were inadequate to meet the reasonable needs of the public.
In apparent anticipation of the forthcoming consent judgment in the AT & T case and motivated by a desire to promote competitive long distance telephone service within Florida, the legislature, in March 1982, enacted chapter 82-51, section 3, Laws of Florida, amending section 364.335 as follows:
(4) The commission may grant a certificate, in whole or in part or with modifications in the public interest, but in no event granting authority greater than that requested in the application or amendments thereto and noticed under subsection (1); or it may deny a certificate. The commission shall not grant a certificate for a proposed telephone company, or for the extension of an existing telephone company, which will be in competition with, or which will duplicate the local exchange services provided by any other telephone company, unless it first amends the certificate of such other telephone company to remove the basis for competition or duplication of services.
*418 This Court examined the effect of chapter 82-51, section 3 on PSC's regulatory authority in Microtel, Inc. v. Florida Public Service Commission, 464 So.2d 1189 (Fla. 1985), where we affirmed PSC's authority to issue certificates for competitive intrastate long distance service and upheld the standards and guidelines of sections 364.335 and 364.337, Florida Statutes (1983). In doing so, we concluded that the amendment evidenced a "clear legislative intent to foster competition" and that "the legislature [has] made the `fundamental and primary policy decision' that there be competition in long distance telephone services." Id. at 1191.
Among the difficulties faced by the communications industry and PSC as a result of the AT & T divestiture and the enactment of chapter 82-51 is how to provide customers with equal access to competing long distance telephone companies,[2] while minimizing the cost of the transition and maintaining universality and quality of service and, concomitantly, how to compensate local telephone companies for the use of their local exchange facilities in completing long distance telephone calls. The two orders under review represent PSC's plan for implementing the federal and state law that there be competitive long distance service while coping with the difficulties set forth immediately preceding. In pertinent part, the PSC plan further divides the ten LATAs and market areas into twenty-two Equal Access Exchange Areas (EAEAs). Within each EAEA, local exchange companies must provide their customers with equal access to competing IXCs for long distance calls outside the EAEA, i.e., inter-EAEA long distance calls. Each customer, thus, has an opportunity to select the IXC which will handle inter-EAEA, and therefore, inter-LATA and interstate long distance calls. By contrast, another provision of the PSC plan establishes a toll monopoly on intra-EAEA calls, whether long distance (toll) or local (non-toll). Within each EAEA, IXCs are required to either use the facilities of the local exchange and compensate the local company for that use or, if unable to use the local exchange facilities for technical reasons, use their own facilities and compensate the local company. Under the PSC plan, those toll monopoly areas are subject to reexamination in September 1986, at which time the local companies will be required to justify their retention.
Appellants challenge the toll monopolies provided to local exchange companies for short-haul long distance service on several grounds. They contend that PSC has no authority under section 364.335(4) to grant toll monopolies on long distance service. In support, appellants cite Microtel, Inc., where we concluded that the legislature had made a policy decision that there be competition in long distance telephone service. We disagree with appellants' position and their reading of Microtel, Inc. for several reasons. First, the PSC plan contains a very large measure of competition on intrastate long distance service. It divides the state into twenty-two geographic areas and prescribes inter-EAEA competition. Thus, the toll monopoly areas, although significant, are limited in scope. Second, the PSC plan contemplates reexamination of the toll monopoly concept in September 1986 when the beneficiaries of the monopoly will have to justify its retention. Thus, the monopoly concept is limited in time. Third, section 364.335(4), as amended, provides that PSC may grant a certificate in the public interest. It does not mandate that such certificates be issued contrary to the public interest. We reiterate our conclusion in Microtel, Inc. that the legislature has made the fundamental and primary decision that there will be competition in intrastate long distance telephone service, but do not read the statute or Microtel, Inc. so expansively as to require instant, unlimited competition in all long distance services. The interim plan of PSC appears to be a well reasoned and *419 carefully crafted response to the legislative direction and to the public interest.
Appellants next contend that section 364.335(4), assuming that it permits monopolies in long distance service, contains no guidelines or standards to govern the designation of such monopolies and is, thus, an unconstitutional delegation of legislative power. We do not read the orders under review as contemplating, nor do we understand it to be PSC's position, that toll monopolies will continue beyond an interim period during which the transition is made from total monopoly on all services to monopoly in local services only. While we believe that the legislature has made the fundamental and primary decision that there will be competition in long distance services, we do not believe that it was the legislative intent that PSC issue certificates of service on demand, where it is not in the public interest, in making the above mentioned orderly transition to full competition on long distance service.
Appellants' next point is that PSC is judicially estopped from maintaining toll monopoly areas in view of its representations to the federal court in the AT & T divestiture suit that there would be intra-LATA competition. We disagree. First, PSC's planned division of the state into twenty-two EAEAs with inter-EAEA competition provides a high degree of intra-LATA competition. As we read Western Electric I, 569 F. Supp. at 1030, the federal court was concerned that the size of the Southeast and Orlando LATAs and the absence of intra-LATA competition might hamper the competitive objectives of the judgment. Both of these LATAs have been further divided into EAEAs and intra-LATA competition introduced. Second, the federal court itself, at page 1005, recognized that the states were not preempted from regulating intrastate and intra-LATA traffic, that states may continue to require a regulated monopoly on local service and intrastate toll service, and that the court lacked the authority to require internal competition over the objections of the states or their regulatory agencies. In short, we do not agree that PSC has made any representation to the federal court which judicially estops it from establishing toll monopolies within EAEAs.
Appellants also urge that PSC in its representations to this Court in Microtel, Inc. averred that it had no authority under section 364.355(4) to deny certificates for long distance service. As we indicated above in our discussion of the interim period of these toll monopolies, we do not believe that it is PSC's position that it has authority to maintain permanent toll monopolies. If that position changes and is challenged after September 1986, we will examine the issue on its merits. It is premature to do so now.
GTE Sprint raises an issue unique to itself which we address separately. The PSC plan contains provisions for IXCs to presubscribe intrastate customers. However, the plan provides that if an IXC's existing capacity is exceeded so that its quality of service (blockage rate) deteriorates below advertised standards, it may not presubscribe additional customers until its capacity is expanded. Because customers may select only one IXC for both intrastate and interstate service, GTE Sprint argues that this restriction impinges on its federal right to presubscribe interstate customers and is preempted by federal law. We agree with PSC that this restriction compliments and furthers both federal and state policy. There is no federal or state right, of which we are aware, to subscribe more customers than capacity permits.
The orders of the Public Service Commission are affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] In addition to seven LATAs carved out of Bell operating territories, Florida has three market areas (Ft. Myers, Tallahassee, Tampa) where independent (non-Bell) local exchange companies operate.
[2] It necessarily follows that providing customers with equal access to competing companies will provide the companies with equal access to the customers.