509 So.2d 1107 (1987)
U.S. SPRINT COMMUNICATIONS COMPANY, Appellant,
v.
John R. MARKS, et al., Appellees.
MICROTEL, INC., et al., Appellants,
v.
John R. MARKS, et al., Appellees.
Nos. 69169, 69159.
Supreme Court of Florida.
July 16, 1987.
Bruce W. Renard, of Messer, Vickers, Caparello, French & Madsen, Tallahassee, Stephen P. Bowen, U.S. Sprint Communications Co., and Deborah A. Dupont, of Reboul, MacMurray, Hewitt, Maynard & Kristol, Washington, D.C., for U.S. Sprint Communications Co.
Patrick K. Wiggins, of Ranson and Wiggins, Tallahassee, for Microtel, Inc.
John P. Fons and Robert L. Hinkle, of Aurell, Fons, Radey & Hinkle, Tallahassee, and Daniel Stark and Robert J. McKee, Jr., AT & T Communications, Inc., Atlanta, Ga., for AT & T Communications of the Southern States, Inc.
Richard D. Melson, of Hopping, Boyd, Green & Sams, Tallahassee, and David Baumann, MCI Telecommunications Corp., Atlanta, Ga., for MCI Telecommunications Corp.
William S. Bilenky, General Counsel, Susan F. Clark, Dir. of Appeals and Robert D. Vandiver, Associate Gen. Counsel, Tallahassee, for Florida Public Service Com'n.
*1108 Alan N. Berg, Gen. Atty., Altamonte Springs, for United Telephone Co. of Florida.
James V. Carideo, Vice President-Gen. Counsel and Thomas R. Parker, Associate Gen. Counsel, Tampa, for Gen. Telephone Co. of Florida.
EHRLICH, Justice.
These consolidated cases are before us for review of Order No. 16343, issued July 14, 1986 by the Public Service Commission. We have jurisdiction, article V, section 3(b)(2), Florida Constitution; sections 350.128 and 364.381, Florida Statutes (1985). We affirm the order of the Public Service Commission.
The issues presented here are the most recent to have arisen during the continuing transition from monopolistic to competitive long-distance telephone service in Florida. In Microtel, Inc. v. Florida Public Service Commission, 464 So.2d 1189 (Fla. 1985) (Microtel I), we recognized that "the legislature made the `fundamental and primary policy decision' that there be competition in long distance telephone service... . which had not heretofore existed." Id. at 1191. In Microtel, Inc. v. Florida Public Service Commission, 483 So.2d 415 (Fla. 1986) (Microtel II), we further explained that when section 364.335(4) was amended in 1982, the legislature was "motivated by a desire to promote competitive long distance telephone service within Florida." Id. at 417.
The historical background needed to understand the issues presented here were set forth in Microtel II. As we explained, telephone service was historically provided on a monopoly basis; this was radically changed by the federal breakup of AT & T:
Broadly, this modified final judgment (MFJ) reorganized AT & T and divested its local telephone companies, restricted the operating areas of local telephone companies, and provided for competitive interstate long distance telephone services.
Id. at 417.
Under the MFJ the former Bell territories were divided into geographic areas or LATAs (local access and transport areas), which marked the boundaries beyond which the Bell operating companies were prohibited from carrying telephone calls. Service between LATAs was to be on a competitive basis by interexchange carriers (IXCs), such as the appellants herein. The size of a LATA, however, necessitated that the local Bell operating companies provide short-haul long distance service within each LATA: "Thus, intra-LATA calls included both toll and non-toll calls." Id. The plan for Florida established seven LATAs, two of which were, because of their size, of concern to the federal court. The court approved the Florida plan, however, because "further division would require large installation costs for new access switches; failure to consolidate the geographic areas would entail rate increases; and, the state regulatory body, PSC, was a strong body committed to promoting intra-LATA competition." Id. In the orders under review in Microtel II, PSC's committment to intra-LATA competition was evidenced by the fact that the PSC had further divided the federally mandated LATAs into twenty-two smaller geographic areas, Equal Access Exchange Areas (EAEAs). Under the PSC plan, the local exchange companies (LECs) were required to provide equal access to the competing IXCs for inter-EAEA long distance calls. Another provision of the plan established a toll monopoly area (TMA) on intra-EAEA calls; intra-EAEA calls encompass both truly local (non-toll) and short-haul long distance (toll) calls. IXCs wishing to compete for intra-EAEA calls were required to either use the LEC's facilities and compensate the LEC for that use, or if technically not feasible, the IXCs could use their own facilities and compensate the LEC. Id. at 418.
The appellants in Microtel II challenged the PSC's order establishing these toll monopoly areas. We approved the PSC orders and rejected the appellants' claim that the PSC had no authority under section 364.335(4) to establish toll monopoly areas for short-haul long distance calls within an EAEA. We reasoned that first, the TMAs were limited in scope as the PSC had divided the federally mandated LATAs into *1109 twenty-two EAEAs, which resulted in a large measure of competition in intra-LATA service. Second, the PSC plan provided for reexamination of the TMAs in September 1986; thus, the TMA concept was limited in time. Third, while we found that section 364.335(4) provided that PSC may grant a certificate for providing long distance service if in the public interest, the statute "does not mandate that such certificates be issued contrary to the public interest." Id. at 418.
We also rejected the appellants' claim that section 364.335(4) contained no guidelines or standards to govern the designation of TMAs, and thus was an unconstitutional delegation of legislative power: "we do not believe that it was the legislative intent that PSC issue certificates of service on demand, where it is not in the public interest, in making the ... orderly transition to full competition on long distance service." Id. at 419.[1]
Finally, we rejected the appellants' claim that the PSC had represented to this Court in Microtel I that it had no authority under section 364.335(4) to deny certificates for long distance service:
we do not believe that it is PSC's position that it has authority to maintain permanent toll monopolies. If that position changes and is challenged after September 1986, we will examine the issue on its merits. It is premature to do so now.
Id.
This rather extended discussion of our decision in Microtel II is necessitated here for two reasons. First, the order under review was issued in fulfillment of the PSC's promise to reexamine the issue of toll monopoly areas in September 1986 "when the beneficiaries of the monopoly will have to justify its retention." Id. at 418. Second, the appellants herein have again raised the same claims that we rejected in Microtel II.
The PSC held hearings on May 1 and 2, 1986 on whether the TMAs should be retained. In its order number 16343, issued July 14, 1986, the PSC determined that it is not yet in the public interest to abolish the TMAs. Predictably, these appeals followed.
We note initially that the decision to revisit, in September 1986, the issue of retaining TMAs was not mandated by any judicial decree, but was instead self-imposed by the PSC as part of its commitment to competition in long distance service. In the order under review, the PSC has refused to set a date certain to again revisit this issue, but has invited any interested party to come forward at any time "with a showing of significantly changed circumstances which would warrant the abolition of TMAs." It is based on this language that the appellants' claim that PSC has created "permanent" toll monopolies, and that it lacks statutory authority to do so. We reject this contention.
The word permanent is, of course, a relative term, and our view of the PSC's order here, which we find to be reasonable and supported by competent substantial evidence, is that it does not contemplate permanent adherence to the concept of TMAs. Whether the TMAs are permanent or temporary must be analyzed within the historical context in which the commission's actions here have been taken. As Commissioner Wilson observed in his opinion concurring with the order under review:
The telephone network which existed prior to 1984-the physical plant, the accounting and allocation systems and regulation (both federal and state)-was not created overnight but evolved over half a century. Certain pricing philosophies which dominated the industry for decades no longer drive industry decisions. Actions by the FCC and the federal courts have fundamentally altered the interrelationship between toll and local rates, and the costs which each may permissibly recover and can economically recover. It is, however, unreasonable to expect the least flexible and most fundamental portion of the telecommunications industry, the local network, to change or *1110 to be able to change as quickly or in the same manner as the toll segment. To thrust the local industry headlong into what may very well be an irreversible situation contrary to the public interest is not responsible regulation.
We reject the appellants' contention that the statute does not authorize the PSC to maintain TMAs during this transitional period. The essence of the appellants' claim is that the legislature has already made the policy decision that competition in all but purely local, (i.e., non-toll) service is in the public interest,[2] and that the PSC has contrived a "roving public interest standard" to thwart the legislative will. In Microtel I, 464 So.2d at 1191, we held that the first step in the certification process, section 364.335, required the PSC "to make an initial decision whether to issue a certificate, guided by the discretionary proviso that certification be in the public interest." The second step in the process are the provisions of section 364.337; section 364.337(2) sets forth specific factors the PSC must consider in its public interest determination. In Microtel II, we again emphasized that pursuant to section 364.335(4), the PSC may issue a certificate in the public interest but "[i]t does not mandate that such certificates be issued contrary to the public interest." 483 So.2d at 418. In our view, the statutory authority for PSC to maintain these temporary TMAs is found both in the requirements of sections 364.335(4) and 364.337. The PSC's findings below were that abolishing TMAs at this time would be detrimental to the public interest: abolition would assuredly cause local rates to rise for the vast majority of local customers, and it would allow the IXCs to "cream-skim" the most profitable, high volume routes while still leaving the LECs with the obligation to provide uniform service to all customers and to average rates statewide in order to ensure relatively inexpensive local service to all customers. We reject the appellants' characterization of the TMAs as permanent and repeat our holding in Microtel II that we do not read the statute or Microtel I "so expansively as to require instant, unlimited competition in all long distance services." 483 So.2d at 418. The PSC's order sets forth numerous steps already taken by the LECs in their attempt to adapt to this new competitive environment. The fact that technological and other cost savings changes have not occurred as rapidly as the PSC had earlier predicted, or as rapidly as the appellants desire, does not transform the TMAs into a permanent fact of life.
The appellants' final claim merits little discussion. They allege that the PSC placed the burden on the IXCs to show that TMAs should be abolished, contrary to its previous representations that the burden would be on the LECs to justify retention. See Microtel II, 483 So.2d at 418. We disagree. Our review of the record shows that ten expert witnesses testified at the hearing below, six on behalf of the LECs and four on behalf of appellants. The PSC rejected each side's predictions concerning a specific dollar impact abolishing the TMAs would have on local rates. The PSC found that regardless of the witnesses' inability to precisely quantify the impact, the result under any series of assumptions or calculations would result in a local rate increase for 70-80% of Florida customers, a result the PSC reasonably found was contrary to the public interest.
Accordingly, order number 16343 of the Public Service Commission is hereby affirmed.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We point out that we also rejected this unlawful delegation claim in Microtel I. 464 So.2d at 1191.
[2] We point out, as we did in Microtel II, that the statutory amendment to § 364.335(4) was enacted in apparent anticipation of the federal breakup of AT & T, and that the federal court's MFJ approved the Florida plan of 7 LATAs. 483 So.2d at 417. The fact that the PSC went further and divided these LATAs into 22 EAEAs, with competition on inter-EAEA calls appears to us to negate the appellants' contention here that the PSC has "mutated the legislative purpose" underlying the statute.