523 So.2d 1211 (1988)
John R. JONES, As Property Appraiser of Escambia County, Florida, and Individually As a Citizen and Taxpayer of Escambia County Florida, Appellant,
v.
The DEPARTMENT OF REVENUE, of the State of Florida, and Ralph Turlington, Commissioner of Education, and the Florida Department of Education, Appellees.
No. 87-429.
District Court of Appeal of Florida, First District.
April 6, 1988.
Rehearing Denied May 11, 1988.
*1212 Elliott Messer of Messer, Vickers, Caparello, French & Madsen and Larry E. Levy of MacFarlane, Ferguson, Allison & Kelly, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., J.C. O'Steen, Asst. Atty. Gen., Tallahassee, for appellees.
NIMMONS, Judge.
Jones appeals from a final judgment upholding the methodology employed by the Department of Revenue (DOR) in determining its estimated level of assessment for Escambia County for the tax year 1984, pursuant to Section 195.096(3)(b), Florida Statutes. We affirm.
Pursuant to Florida law, DOR performs a biennial in-depth review of the ad valorem assessment rolls in each county in the state to determine the level of assessment in such county under Section 195.096(2), Florida Statutes. In those years when the county is not subject to in-depth review, DOR estimates the level of assessment for each county. Section 195.096(3)(b), Florida Statutes. The significance of these levels of assessment is that they affect the amount a district is required to provide annually toward the cost of education. See Section 236.081(4), Florida Statutes.
Section 195.096(3)(b), Florida Statutes, provides as follows:
When necessary for compliance with s. 236.081, and for those counties not being studied in the current year, the Division of Ad Valorem Tax shall project valueweighted mean levels of assessment for each county. The Division of Ad Valorem Tax shall make its projection based upon the best information available, utilizing professionally accepted methodology. ...
* * * * * *
In lieu of the statistical and analytical measures published pursuant to paragraph (a), the department shall publish details concerning the computation of estimated assessment levels and the allocation of changes in assessed value for those counties not subject to an in-depth review. (e.s.)
Escambia County was subject to an in-depth review in 1983 and had a level of assessment of 95.3%. In 1984, Escambia County was in a non-in-depth study year and accordingly estimates were made. The final estimated level of assessment for Escambia County for the tax year 1984 was 95.2% compared to the statewide mean level of assessment estimated at 96.5%. In determining this estimated level of assessment, DOR relied in part on the growth rate figures of Escambia County's property values as estimated by its economist, Mrs. Adina Simmons.
From the evidence, the trial court found that DOR utilized professionally-accepted methodology based upon the best information available in estimating the 1984 level of assessment for Escambia County as required by Section 195.096(3)(b), Florida *1213 Statutes. The trial court further found that, contrary to Jones' assertions, Section 195.096(3)(b) did not constitute an improper delegation of legislative authority.
Three issues have been presented for our review: (1) whether the methodology employed by the Department of Revenue in projecting its level of assessment for the non-in-depth study year was unlawful; (2) whether appellant, as a property appraiser, had standing to challenge the constitutionality of Section 195.096(3)(b); and (3) whether Section 195.096(3)(b) constitutes an unlawful delegation of legislative authority.
Appellant asserts that Section 195.096(3)(b) requires DOR to employ a quantitative or objective methodology in projecting levels of assessment for non-in-depth study years. In projecting the 1984 level of assessment in the instant case, DOR relied upon Mrs. Simmons' estimated growth rates. In arriving at her growth rate estimates, Mrs. Simmons employed a qualitative methodology by which she exercised her professional judgment as to what data to consider and what weight to ascribe to such data. According to appellant, the use of this subjective methodology was unlawful. We disagree.
Section 195.096(3)(b) requires DOR to make its projection of the levels of assessment for each county based upon "the best information available, utilizing professionally accepted methodology... ." We agree with the trial court that the data reviewed by Mrs. Simmons was the best data available and the methodology she employed, while qualitative in nature, was professionally accepted.
The expert testimony of Dr. Fishkind, an economist who testified for DOR, supports the trial court's finding. Dr. Fishkind expressed his professional opinion that, after reading Section 195.096(3)(b) and reviewing what DOR did in the 1984 non-in-depth study year for Escambia County, the best information available and professionally accepted methodology were utilized as required by the statute.
According to Dr. Fishkind, the qualitative method of forecasting is very widely used. Such a method produces very good forecasts that are professionally acceptable when the method is systematically applied and the best data available is utilized. Dr. Fishkind reviewed the methodology used by Mrs. Simmons and analyzed the precision of her projections. Dr. Fishkind found that Mrs. Simmons had used the best data available and had conducted a systematic review of that data. Dr. Fishkind testified that Mrs. Simmons' forecasts were very precise and that he could not "turn out forecasts that would offer any greater precision for real estate markets than the forecasts produced by the qualitative method."
Appellant has presented other methods that he and his experts believe are better than the method utilized by DOR in this case. Yet appellant's mere disagreement with DOR's methodology does not render the use of that methodology unlawful. Although other professionally accepted methodologies were available to DOR in arriving at the estimated level of assessment in 1984 for Escambia County, the availability of other methodologies does not mean that the methodology used by DOR was less than a "professionally accepted methodology" as required by Section 195.096(3)(b).
Furthermore, contrary to appellant's assertions, Section 195.096(3)(b) does not contemplate the use of a solely objective or quantitative methodology. The very nature of this statute calls for a certain amount of subjectivity. This statute requires the projection of assessment levels during non-in-depth study years, unlike the objective calculations involved in the review of in-depth study years. Moreover, the last paragraph in Section 195.096(3)(b) provides that "[i]n lieu of the statistical and analytical measures published pursuant to paragraph (a), the department shall publish details concerning the computation of estimated assessment levels... ." (e.s.) Any projection or estimation involves a certain amount of subjectivity. Thus, the very language of this statute establishes the propriety of a qualitative method in projecting levels of assessment.
Appellant also challenges the constitutionality of Section 195.096(3)(b), Florida *1214 Statutes. He alleged in his complaint that Section 195.096(3)(b) violates article II, section 3 and article III, section I of the Florida Constitution in that it constitutes an improper delegation of legislative authority. Before reaching the merits of appellant's challenge, however, it is first necessary to determine whether appellant had standing to challenge the constitutionality of the statute.
Appellant has argued that as a property appraiser, he had the requisite standing. However, this court established in Miller v. Higgs, 468 So.2d 371 (Fla. 1st DCA 1985), that a property appraiser does not have standing to bring a suit to challenge the validity of a taxing statute or regulation. See also Department of Revenue v. Markham, 396 So.2d 1120 (Fla. 1981). State officers and agencies are required to presume that the legislation affecting their duties is valid, and they do not have standing to initiate litigation for the purpose of determining otherwise. Department of Education v. Lewis, 416 So.2d 455 (Fla. 1982) and Barr v. Watts, 70 So.2d 347 (Fla. 1953).
Nevertheless, we find that, although appellant did not have standing to challenge the constitutionality of the statute in his official capacity as a property appraiser, he did have standing in his individual capacity as a citizen and taxpayer.[1] The general rule is that a taxpayer of a state or county has standing to bring an action against the proper public officials to restrain the unlawful exercise of the state's or county's taxing or spending authority only on a showing of special injury to such taxpayer that is distinct from that sustained by every other taxpayer in the taxing unit. 55 Fla.Jur.2d Taxpayers' Actions § 6 (1984); Paul v. Blake, 376 So.2d 256 (Fla. 3d DCA 1979). However, an exception to this rule recognizes that a taxpayer may institute such a suit without a showing of special damage if he attacks the exercise of the public body's taxing or spending authority on the ground that it exceeds specific limitations imposed on its taxing or spending power by the United States Constitution or the Florida Constitution. Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972); Brown v. Firestone, 382 So.2d 654 (Fla. 1980); and Department of Education v. Lewis, 416 So.2d 455 (Fla. 1982). Appellant mounted such a constitutional attack in this case and therefore had standing in his individual capacity to challenge the statute.
Addressing the merits of appellant's constitutional challenge, we find that Section 195.096(3)(b) does not constitute an unlawful delegation of legislative authority. Unlawful delegation refers to the power to make a law rather than the authority as to its execution; the legislature may expressly authorize designated officials within valid limitations to provide rules for the complete operation and enforcement of the law within its expressed general purpose. State, Department of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970). Certain functions may be transferred by the legislature to permit administration of legislative policy by an agency with the expertise and flexibility needed to deal with complex and fluid conditions. See Microtel, Inc. v. Florida Public Service Commission, 464 So.2d 1189 (Fla. 1985). The very conditions which may operate to make direct legislative control impractical or ineffective may also, for the same reasons, make the drafting of detailed or specific legislation impractical or undesirable. Griffin, 239 So.2d at 581.
The statute at issue in this case concerns the field of economics, a highly complex discipline which requires the expertise and flexibility of the agency to deal with "complex and fluid" conditions. The legislature in Section 195.096(3)(b) has not delegated power to DOR to make the law, but rather authority as to its execution. If the legislature had not done so, it "would be forced to remain in perpetual session and devote a large portion of its time to regulation." Microtel, Inc., 464 So.2d at 1191; cf. Department of Insurance v. Southeast Volusia *1215 Hospital District, 438 So.2d 815, 819 (Fla. 1983) (provision of Section 768.54(3)(c), Florida Statutes (1983), directing that base fees for health maintenance organizations, etc., be "established by the fund on an actuarial basis," not unconstitutional as an unlawful delegation of power, because such term is recognized as an established, meaningful standard within the industry). The critical language of Section 195.096(3)(b), authorizing DOR to utilize "professionally accepted methodology," denotes and incorporates professional standards within the appropriate field  economics in this case. The record in this case does not establish an unlawful delegation to DOR of legislative authority.
AFFIRMED.
SMITH, C.J. and ERVIN, J., concur.
NOTES
[1] Appellant alleged in his complaint that he was bringing his suit for declaratory judgment not only in his capacity as a property appraiser but also in his capacity as an individual citizen and taxpayer of Escambia County.