ERVIN, Judge,
specially concurring.
I concur because I feel bound to follow this court’s precedent finding Section 39.-061, Florida Statutes (Supp.1990), unconstitutional as an invalid delegation of legislative authority in contravention of the separation of powers provision of Article II, Section 3, Florida Constitution.[1] See D.P. v. State, 597 So.2d 952 (Fla. 1st DCA 1992) (on motion for clarification); and see, e.g., S.M. v. State, 597 So.2d 950 (Fla. 1st DCA 1992); M.M. v. State, 597 So.2d 951 (Fla. 1st DCA 1992); A.P. v. State, 597 So.2d 948 (Fla. 1st DCA 1992). Nevertheless, I am also aware that the power to determine whether a statute is constitutional is a most grave and important power, which should not be exercised lightly or rashly, and that any doubt in the law's validity should be resolved in its favor. Cotten v. County Comm’rs of Leon County, 6 Fla. 610, 613 (1856).
I consider that the ordinary presumption favoring the validity of statutes should be respected in situations in which a challenge is raised asserting the invalidity of a statute based upon the ground of an invalid legislative delegation of authority. The prohibition against unlawful legislative delegations, which is known as the delegation or nondelegation doctrine, is a doctrine *107 which, in recent years, has been honored more in the breach than in the observance. Although I realize that the Florida Supreme Court in Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978), struck down a statute by utilizing the delegation doctrine, I nonetheless submit that the exceptions to the doctrine have practically swallowed the rule.[2]
Moreover, the delegation doctrine has been for all practical purposes entirely discredited in the federal sector and in a number of other jurisdictions. See Carl J. Pec-kinpaugh, Jr., Florida’s Adherence to the Doctrine of Nondelegation of Legislative Power, 7 Fla.St.U.L.Rev. 541 (1979). This trend seems to be slowly emerging in Florida as well. As Professor Burris has observed: “[Sjince 1981, the Florida courts have gradually abandoned the rigorous application of the formalist approach to the delegation doctrine outlined in the Cross Key decision. Instead the courts have adopted a pragmatic approach to delegation issues, similar to that used in the federal courts.” Johnny C. Burris, The 1988 Survey of Florida Law, Administrative Law, 13 Nova L.Rev. 727, 729-30 (1989) (footnote omitted). Professor Burris’s comments on the delegation doctrine in 1990 were as follows: “While the courts continue to ritualistically refer to the Cross Key decision, the nature of the inquiries made under the rubric of the delegation doctrine is now pragmatic, designed to assure in a minimalistic fashion that the legislature, and not administrative agencies, is making fundamental policy decisions.” Johnny C. Burris, The 1989 Survey of Florida Law, Administrative Law, 14 Nova L.Rev. 583, 586 (1990).
Some of the representative cases adopting the so-called pragmatic approach include Microtel, Inc. v. Florida Public Service Commission, 483 So.2d 415 (Fla.1986), in which the court rejected an unlawful delegation argument as to Section 364.-335(4), Florida Statutes, which authorized the Florida Public Service Commission to grant certificates for long distance service under the conditions specified in the statute. In so doing, the court stated that the legislature had “made the fundamental and primary decision” and left implementation thereof to the Commission. Id. at 418-19. Again, in State v. Cain, 381 So.2d 1361, 1367-68 (Fla.1980), the court rejected the argument that the delegation of authority to a prosecutor to decide whether to try a juvenile as an adult in light of a public interest standard was an unconstitutional delegation of legislative authority. Similarly, in Jones v. Department of Revenue, 523 So.2d 1211 (Fla. 1st DCA 1988), this court held that the delegation of authority to the Department of Revenue to make projections for ad valorem tax assessment for each county “ ‘based upon the best information available, utilizing professionally accepted methodology’ ” [3] was not an improper delegation of a legislative function. Id. at 1214. There the court explained that “[ujnlawful delegation refers to the power to make a law rather than the authority as to its execution; the legislature may expressly authorize designated officials with *108 in valid limitations to provide rules for the complete operation and enforcement of the law within its expressed general purpose.” Id. (emphasis added).
Of course, the nondelegation doctrine still holds firm in instances where the power delegated was not lawfully delegable. Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260 (Fla.1991) (legislature improperly delegated appropriations function, which could only constitutionally be exercised by legislative branch); Barry v. Garcia, 573 So.2d 932 (Fla. 3d DCA) (city commission had no authority to grant subpoena power to independent investigatory body), review denied, 583 So.2d 1034 (Fla.1991). See also Smith v. State, 537 So.2d 982 (Fla.1989) (legislature improperly delegated authority to supreme court to promulgate sentencing guidelines).
I suggest that it may be possible to apply a “bright line” test for the purpose of gauging the validity of a statute once a delegation challenge is raised. Such an analysis would follow that employed by the Florida Supreme Court in Chiles v. Children A, B, C, D, E, and F, wherein the court invalidated Section 216.221(2), Florida Statutes (1989), giving the governor and members of the cabinet, acting as the Administrative Commission, the power to reduce all state agency budgets by a sufficient amount in order to prevent a deficit. In so concluding, the court observed that only the legislative branch of government has the constitutional power to appropriate state funds, as well as the concomitant power to reduce appropriations. Chiles, 589 So.2d at 265-66. In my judgment the Chiles decision should be regarded as simply stating that once an explicit power has been constitutionally delegated to a particular branch of government, that branch, under the doctrine of separation of powers, has no right to delegate such power to another branch of government.
In applying the Chiles rule to section 39.061, I think that it cannot be said that the legislature has delegated to the executive branch of government a power which has been constitutionally delegated only to it to exercise, simply because the legislature has empowered the Department of Health and Rehabilitative Services (HRS) with the discretion to establish eight levels of restrictiveness. Obviously, the power to make laws has been delegated to the legislature under article III, section 1 of our constitution, and the legislature has clearly set forth a legislative policy criminalizing escapes. See § 944.40, Fla.Stat. (1989). Section 39.061 further defines this policy by providing that a juvenile's departure from a secure detention or commitment facility of restrictiveness level VI or above constitutes escape. It logically follows, by implication, that the legislature has also provided that a juvenile’s departure from a nonresidential facility is not escape.
As to “restrictiveness level VI,” which is not expressly defined, the legislature has given some guidance in that “restrictiveness level,” defined as “broad custody categories for committed children,” is limited to eight levels and is further defined by way of example, i.e., “nonresidential, residential, and secure residential.” Section 39.-01(61) Fla.Stat. (Supp.1990). Moreover, because the legislature has said that placement in the various levels depends on “risk and needs of the individual child,” id., it has by implication directed that the different levels of restrictiveness be determined based on risk. While it may have been preferable for the legislature to provide more detailed standards, I strongly doubt that — considering the complexity of the juvenile detention system — the lack of further standards, under the circumstances, necessarily renders the statute unconstitutional. For a persuasive analogy involving the prison system, see Clark v. State, 395 So.2d 525 (Fla.1981), wherein the court concluded that wide deference should be given to the Department of Corrections, because the realities of running a prison are complex and difficult, and because legislative supervision of prisons and detailed legislation were impractical.
Obviously, the power to designate certain restrictive levels of juvenile facilities is not one explicitly conferred upon the legislature by article III of the Florida Constitution. Consequently, once the legislature established the broad contours of policy, *109 i.e., by enacting the law forbidding escape from certain enumerated classes of facilities, I see no reason why the legislature could not lawfully delegate to an agency of the executive branch the power to classify the levels of restrictiveness based upon, as stated in section 39.01(61), “the risk and needs of the individual child.” If unlawful delegation involves simply the power to make a law rather than the authority to execute it, Jones, 523 So.2d at 1214, it appears to me that by enacting sections 39.01(61) and 39.061, the legislature has made the fundamental and primary policy decision to forbid escape from specified classes of facilities, but has delegated to HRS the power to determine the explicit levels, pursuant to certain minimal standards and guidelines established by the legislature. As we recognized in Jones, “[T]he legislature may expressly authorize delegated officials within valid limitations to provide rules for the complete operation and enforcement of the law within its expressed general purpose.” Id. at 1214 (emphasis added).
In conclusion, I believe that the legislature has dictated the basic criteria to be followed by HRS in determining the restrictive levels of the three classes of facilities designated in section 39.061. HRS has implemented the legislature’s decision by adopting Florida Administrative Code Rule 10M-32.001. Therefore, were it not for the precedent established by D.P., et al., I would uphold section 39.061 as a valid delegation of legislative authority. As for the delegation doctrine, it is my position that unless the constitution expressly confers a power upon one branch of government — as in Chiles, the power of the legislature to appropriate state funds — the doctrine of nondelegation should generally be consigned to the ash heap composed of other discarded or ignored judicial doctrines, e.g., privity between consumer and manufacturer as a prerequisite to legal action, contributory negligence as a bar to legal action, caveat lessee, sovereign immunity, etc.

. Article II, section 3, provides:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

. My review of pertinent case law reveals the existence of three general exceptions to the non-delegation doctrine: The first exception applies when the subject of the statute relates to licensing and determinations of fitness of license applicants, and the second occurs when the statute regulates a business operated as a privilege rather than a right, which is potentially dangerous to the public. See Astral Liquors, Inc. v. Department of Business Reg., 463 So.2d 1130, 1131 (Fla.1985); Department of Business Reg., Div. of Alcoholic Beverages & Tobacco v. Jones, 474 So.2d 359, 361-62 (Fla. 1st DCA 1985), review denied, 484 So.2d 8 (Fla.1986); Florida Waterworks Ass’n v. Florida Pub. Serv. Comm’n, 473 So.2d 237, 245 (Fla. 1st DCA 1985), review denied, 486 So.2d 596 (Fla.1986). The third exception, and the one which appears most applicable to the case at bar, is when the subject matter is highly complex and expertise and flexibility are needed to deal with its complexity and fluid conditions. See Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815, 820 (Fla.1983), appeal dismissed sub nom. Southeast Volusia Hosp. Dist. v. Florida Patient’s Compensation Fund, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); Clark v. State, 395 So.2d 525, 527-28 (Fla.1981); State v. Bender, 382 So.2d 697, 700 (Fla.1980); Jones v. Department of Revenue, 523 So.2d 1211, 1214 (Fla. 1st DCA 1988).

. Id. at 1212 (quoting Section 195.096(3)(b), Florida Statutes).