672 So.2d 878 (1996)
MARINE INDUSTRIES ASSOCIATION OF SOUTH FLORIDA, INC., Appellant,
v.
FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION and Save the Manatee Club, Inc., Appellees.
No. 94-2525.
District Court of Appeal of Florida, Fourth District.
May 1, 1996.
*879 Jennifer Parker La Via of the Parker Law Firm, Tallahassee, and Jack M. Skelding, Jr., David D. Eastman and Barbara C. Fromm of Skelding, Labasky, Corry, Eastman & Hauser, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Jonathan A. Glogau, Assistant Attorney General, Tallahassee, for Appellee-Florida Department of Environmental Protection.
David Gluckman of Gluckman and Gluckman, Tallahassee, for Appellee-Save the Manatee Club, Inc.
WARNER, Judge.
This appeal challenges the constitutionality of a section of the Florida Manatee Sanctuary Act as being an unauthorized delegation of legislative authority to an administrative agency. It also challenges the rule adopted by the Department of Environmental Protection providing for a slow speed boating zone in portions of the intracoastal waterway in Broward County on the grounds that it was an invalid exercise of delegated legislative authority and that the evidence did not support its enactment. We affirm in all respects.
Manatees are an endangered species both under federal and state law. Approximately 2,000 manatees live in Florida waters, and of those only 900 inhabit the east coast of Florida. The manatee has been designated as the state marine animal, section 15.038(1), Florida Statutes (1995), and a manatee license plate has been authorized by the Legislature to raise funds for the protection of manatees. § 320.08056(4)(a), Fla.Stat. (1995). Radio and television spots highlight efforts to save the manatee, and organizations supporting manatees routinely lobby the Legislature for laws to protect the species.
As a result of this activity, the Legislature passed the Florida Manatee Sanctuary Act in 1978 and designated the entire state of Florida to be a refuge and sanctuary for the manatee. § 370.12(2)(b), Fla.Stat. (Supp. 1978). Because one of the most pressing dangers to the slow-moving manatee is collisions with motorboats, the Legislature designated thirteen specific geographic regions over a period of several years and authorized the Department of Environmental Protection (Department) to regulate the expansion and construction of marine facilities and the operation and speed of motorboats in these areas "only where manatee sightings are frequent and it can be generally assumed, based on available scientific information, that they inhabit these areas on a regular or continuous basis." § 370.12(2)(f), Fla.Stat. In subsequent years, the Legislature added other areas where the Department was given the *880 authority to regulate the operation and speed of motorboat traffic. § 370.12(2)(g), (h), (i), & (k), Fla.Stat. Finally, in 1983 the Legislature passed subsection 370.12(2)(n), which provides:
The department may designate by rule other portions of state waters where manatees are frequently sighted and it can be assumed that manatees inhabit such waters periodically or continuously. Upon designation of such waters, the department shall adopt rules to regulate motorboat speed and operation which are necessary to protect manatees from harmful collisions with motorboats and from harassment.
§ 370.12(2)(n), Fla.Stat. (1983). Pursuant to this delegation of authority, the Department proposed Administrative Rule 16N-22.010(1)(e) and (g) (1993) to the Administrative Code to regulate boat speed in Broward County. Fla.Admin.Code Ann.R. 16N-22.010(1)(e) & (g) (1993) (now 62N-22.010(1)(e) & (g).
Broward County contains two power plants, the Fort Lauderdale Power Plant and the Port Everglades Power Plant, where manatees exist in great numbers. The areas around these power plants are two of the thirteen legislatively designated geographical areas where the Department can regulate both marine facilities and motorboat operation and speed. § 370.12(2)(f)6. The proposed regulations would apply a wintertime weekend slow speed zone on the intracoastal waterway from the Palm Beach/Broward County line to East Las Olas Boulevard, about a sixteen mile stretch of what is referred to as the North Intracoastal Waterway (NICW). This is part of a travel corridor from the Riviera Beach Power Plant in Palm Beach County to the Broward plants. It would also apply a slow speed zone within 50 feet of the shoreline and a maximum 25 mile per hour speed buffer zone year round in all other parts of the intracoastal waterways throughout Broward County. The appellant challenges only the slow speed regulation in the northern Broward County intracoastal waterway as it provides the only ocean access for small boats through the Hillsboro Inlet and through Port Everglades.
I. Is section 370.12(2)(n) an unconstitutional delegation of legislative authority?
Relying primarily on Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978), the appellant argues that section 370.12(2)(n) is an unconstitutional delegation of legislative power in that it fails to specifically define the geographical limits within which the Department may act without sufficient guidelines ascertainable from the Act itself. In Askew, the court reviewed the constitutionality of the Florida Environmental Land and Water Management Act in which the Legislature had delegated to the Division of State Planning the authority to recommend to the Governor and Cabinet, sitting as the Administrative Commission, "areas of critical state concern" within the state. Designation as an area of critical state concern required the enactment of a comprehensive set of development regulations by the local government to be monitored by the state. The Act prohibited the Administration Commission from designating more than five percent of land within the state as areas of critical state concern. Land could be designated as an area of critical state concern only if it had significant impact on environmental, historical, natural, or archaeological resources of regional or statewide importance, or if it significantly affected an existing or proposed major public facility or area of major public investment.
The Askew court looked at Article II, Section 3, Florida Constitution, which provides:
Branches of government. The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

Art. II, § 3, Fla. Const. (emphasis supplied). While some states and the federal government had adopted the theory of delegation of legislative power which stressed a shift from legislatively imposed standards for administrative action to procedural safeguards in the *881 administrative process, the court viewed the second sentence of Article II, Section 3, Florida Constitution, as being an express limitation upon the exercise of legislative powers by a member of the executive branch:
Flexibility by an administrative agency to administer a legislatively articulated policy is essential to meet the complexities of our modern society, but flexibility in administration of a legislative program is essentially different from reposing in an administrative body the power to establish fundamental policy.
. . . .
Accordingly, until the provisions of Article II, Section 3 of the Florida Constitution are altered by the people we deem the doctrine of nondelegation of legislative power to be viable in this State. Under this doctrine fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.
Askew, 372 So.2d at 924-25. The court held that section 380.05(1)(a), Florida Statutes (1975), was unconstitutional because the Legislature did not provide minimum standards and guidelines to set priorities among competing areas and resources which could be classified as areas of critical state concern under the Act. Id. at 919. Instead, the Act left this fundamentally legislative task of determining which geographic areas and resources were most in need of protection to the executive branch.
The appellant would have us read Askew as standing for the proposition that the failure to define specific geographical limitations within which an executive agency may act is always fatal to any delegation of administrative authority in any law. The geographical limitation was important in Askew because what was being regulated was land and the development to be allowed on it. The Act lacked criteria by which the Administrative Commission could determine which land should be so regulated:
When legislation is so lacking in guidelines that neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature in its conduct, then, in fact, the agency becomes the lawgiver rather than the administrator of the law.
Id. at 918-19.
In the case of the Florida Manatee Sanctuary Act, there is no doubt that the Legislature acted to protect the endangered manatee, as it designated the entire state a manatee sanctuary. A sanctuary is a place of protection, and in the statute specific provisions protecting the manatee have been included. Therefore, the entire state is a place of protection for the manatee.
Askew holds that the Legislature must set minimum standards by which an administrative agency shall be guided in establishing its rules to effectuate legislative intent. The sufficiency of the standards depends on "the subject matter dealt with and the degree of difficulty involved in articulating finite standards." Id. at 918. However, "[i]f the subject matter `requires the expertise and flexibility of the agency to deal with "complex and fluid" conditions', the legislature will not be required to draft more detailed or specific legislation." Apalachee Regional Planning Council v. Brown, 546 So.2d 451, 453 (Fla. 1st DCA 1989) (quoting Jones v. Department of Revenue, 523 So.2d 1211, 1214 (Fla. 1st DCA 1988)), approved, 560 So.2d 782 (Fla.1990). In the instant case, the Department is charged with enacting rules to protect a migratory endangered species which inhabits waters also used by the public. By the very nature of the problem and the mobility of the manatee, articulating exact standards would be difficult at best and probably subject to change on a yearly basis as the manatees' habitat changes.
The Department points to the legislative directive that it may regulate motorboat operation and speed in areas "where manatees are frequently sighted and it can be assumed that manatees inhabit such waters periodically or continuously" as setting a minimum standard to which their rule-making must conform. Further, the Department *882 may only adopt rules which are "necessary to protect manatees from harmful collisions or harassment." § 370.12(2)(n). The appellant claims that "frequently sighted" is too vague a standard to be any standard at all. We disagree. As "frequently" is not defined specially, we look first to the ordinary meaning of the word, which is what the Department relied on in its establishment of the speed zones in Broward County. The ordinary definition of "frequent" is "occurring often; happening repeatedly at brief intervals." Webster's New World Dictionary 579 (1966). This definition must, however, be placed in the context of what is being sighted "frequently." We are dealing here with an endangered species of very limited numbers. Therefore, "frequent" must be interpreted with this scarcity in mind. Whether the manatee is seen "frequently" is a quantifiable measurement which can be made by the Department by applying its expertise to its data collection. We do not think that it is beyond the ability of the Department or a court reviewing agency action to determine whether or not a rule comports with these guidelines. Thus, the Department is not the lawgiver but acting as the administrator of the law. We therefore hold that the statute is not an unconstitutional delegation of legislative power to an executive agency.
II. Is Administrative Rule 16N-22.010(1)(g)15 an invalid exercise of delegated legislative authority?
Alternatively, the appellant claims that if the statute is constitutional, then the rule is an invalid exercise of delegated legislative authority because the evidence below did not establish "frequent sightings" of manatees in those areas regulated. The standard of review for an agency's action is as follows:
If the agency's action depends on any fact found by the agency in a proceeding meeting the requirements of s. 120.57, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record.
§ 120.68(10), Fla.Stat. (1995).
The hearing officer made a specific finding that manatees use the NICW in Broward County often and are frequently sighted there. Through various tracking studies including aerial surveys, radio telemetry data, manatee sightings and observations by researchers, scar catalog data, and expert opinions, the appellees showed that the intracoastal waterway is a travel corridor for manatees which migrate between the Riviera Beach Power Plant in Palm Beach County and the Port Everglades Power Plant in Broward County, particularly in the winter months. About 200 manatees use this path. Considering that only 900 manatees inhabit the east coast of Florida, this is a sizeable percentage of the entire endangered species population which traverses this sixteen mile stretch of waterway in Broward County. While the appellant has pointed to various individual surveys to show that an individual survey, taken by itself, does not show frequent sightings, the experts testified that the sum total of the available data as well as their knowledge of the habits of the animal resulted in their opinion that manatees frequented this area. The hearing officer's findings were supported by competent substantial evidence. Thus, we hold the rule is a valid exercise of delegated legislative authority.
III. Did the Department properly comply with its own rules in designating the NICW a slow speed zone where manatees congregate?
Finally, appellant argues that the Department did not follow its own rule which allows it to establish a "slow speed zone" only where manatees are known to congregate. The hearing officer noted that the term "congregate" was not defined either by statute or rule. The hearing officer accepted the Department's definition that "congregate means more than one mammal together, without assigning a reason for the congregation." Finding the Department's interpretation to be reasonable and the evidence to have shown that under that definition manatees *883 "congregated" in the NICW, the hearing officer upheld the rule. We affirm the hearing officer's conclusions as the validity of the regulations promulgated should be sustained as long as they are reasonably related to the purposes of the enabling legislation and are not arbitrary and capricious. Agrico Chem. Co. v. State, Dep't of Envtl. Regulation, 365 So.2d 759 (Fla. 1st DCA 1978). In the context of the scarcity of manatees all over Florida, the definition of "congregate" applied by the Department is neither arbitrary nor capricious and reasonably relates to the protection of this endangered species.
Given the Legislature's concerted efforts to protect the manatee, we conclude that the statute is constitutional, and that the rules promulgated are proper exercises of delegated authority. We recognize the imposition that these rules place on the rights of boaters to use the waters of the state in the manner which they have previously enjoyed. In the enactment of section 370.12(2)(n), the Legislature placed a priority on the protection of the endangered manatees. The appellant's concern that the proper balance between manatees and humans has not been struck is a policy decision properly addressed to the legislative branch of government.
Affirmed.
PARIENTE and SHAHOOD, JJ., concur.