464 So.2d 131 (1985)
Wallace ORR, Secretary, State of Florida, Department of Labor and Employment Security; and D. Robert Graham, Governor of the State of Florida, Appellants,
v.
David L. TRASK, Appellee.
No. 65487.
Supreme Court of Florida.
February 21, 1985.
Rehearing Denied March 22, 1985.
*132 Dan F. Turnbull, Jr., Asst. Gen. Counsel, Tallahassee, for Wallace Orr.
Jim Smith, Atty. Gen., and Kent Weissinger and Gerald B. Curington, Asst. Attys. Gen., Tallahassee, for D. Robert Graham.
Reubin O'D. Askew of Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, Arthur J. England, Jr. of Fine, Jacobson, Block, England, Klein, Colan & Simon, Miami, and Stephen Marc Slepin of Slepin, Slepin, Lambert & Waas, Tallahassee, for appellee.
Mark Herron and Chris Haughee, the Florida House of Representatives, and D. Stephen Kahn of Kahn & Dariotes, Tallahassee, amicus curiae, for The Florida House of Representatives, Representative H. Lee Moffitt, Representative Herbert F. Morgan, and The Florida Senate, Senator N. Curtis Peterson, Jr., and Harry A. Johnston, II.
SHAW, Justice.
This cause is before us on a certification by the district court of appeal that the judgment of the trial court is of great public importance. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
Appellee Trask is a deputy commissioner of Workers' Compensation in District K, Dade and Monroe Counties. He was initially appointed to his post in January 1974, and subsequently reappointed to four-year terms in 1978 and 1982 following the favorable determination of the judicial nominating commission in accordance with section 440.45, Florida Statutes (1981). His current term expires in January 1986.
Funds to pay deputy commissioners are drawn from the Workers' Compensation Administration Trust Fund by authority of the legislative appropriations act. In 1983 the legislature undertook to reduce the number of deputy commissioner positions in District K by reducing the funds appropriated and by including in the 1983 General Appropriations Act, chapter 83-300, Laws of Florida, a proviso that

*133 [f]unds and positions in Specific Appropriation 1203 contemplate the elimination of one Deputy Commissioner by July 1, 1983 and three Deputy Commissioners by December 31, 1983; one from District J and three from District K.
Chapter 83-300 was enacted 24 June 1983, approved by the Governor on 30 June 1983, and became effective 1 July 1983.
Secretary Orr and Governor Graham undertook to reduce the District K deputy commissioner positions as contemplated by the appropriations act. At that time two positions were unfilled because of the retirement of a deputy in 1982 and the death of another in June 1983. Another deputy, whose term was scheduled to expire in November 1983, had been selected for retention in March 1983. Secretary Orr, the cognizant department head responsible for budgetary adjustments in accordance with the appropriations act, conducted a review of the District K positions and incumbents in order to select the positions to be abolished. Secretary Orr forwarded his recommendation, along with supporting analysis, to the Governor on 22 August 1983. The same day Secretary Orr advised Deputy Commissioner Trask of his decision to eliminate his position effective 31 December 1983. On 17 December 1983 Trask brought an action in circuit court seeking a declaratory judgment declaring his entitlement to complete his term of office and enjoining petitioners from aborting that term of office. The trial court granted a temporary injunction which had the effect of continuing five deputies in office in District K beyond 31 December 1983, although there were only four positions authorized under the appropriations act. On 20 February 1984 one of the five deputies resigned her office in order to accept an appointment to a circuit judgeship. Thereafter, on 10 April 1984, the trial court entered its final judgment finding that Trask had a vested right and title to his office, that the legislature could not terminate that office by the annual appropriations act, and that Secretary Orr's arbitrary selection of Trask's position for elimination could not and did not abolish Trask's right to his office. The trial court permanently enjoined appellants from attempting to oust Trask from his office and, alternatively, enjoined appellants from appointing a successor to the deputy who resigned on 20 February 1984. On appeal to the district court of appeal, the case came on to us by certified question.
The parties present us with a wide ranging variety of constitutional and statutory questions, most of which are not squarely posed or are not necessary to a disposition of the case. We choose to address only three issues.
We first address the argument presented to us most prominently in support of the trial court's judgment. The thrust of this argument is that Trask has no quarrel with the legislature's authority to abolish statutory offices, that the culprit was the Governor who chose to reappoint a deputy whose term expired in November 1983, thus creating the problem of five deputies with only four positions. In Trask's view the legislature knew of the two open positions and the November expiration of the term of a third deputy when it deleted the three deputy positions in District K. Thus, Trask concludes, appellants frustrated legislative intent. In support, Trask argues that if appellants' actions are upheld, it will set a precedent whereby future governors will politicize the deputy system by firing deputies at will and replacing them with political cronies. This argument has no merit in fact or law. Appellants were not acting on their own volition; they were responding to legislative directions which, at least on their face, were valid. Further, under the provisions of section 440.45 a governor can only remove deputies for cause. A governor's only truly discretionary power on appointing and reappointing deputies is to select an initial appointee from the list of the three or more nominees provided to him by the appellate district judicial nominating commission. The decision as to whether an incumbent will be reappointed rests entirely with the judicial nominating commission.
(2) ... If the judicial nominating commission votes not to retain the deputy *134 commissioner, the deputy commissioner shall not be reappointed... . If the judicial nominating commission votes to retain the deputy commissioner in office, then the Governor shall reappoint the deputy commissioner for a term of four years.
§ 440.45(2), Fla. Stat. (1981) (emphasis supplied). In the case at hand, as it was required to do by law, the judicial nominating commission reviewed the conduct of the deputy whose term was scheduled to expire in November and submitted a report of its decision to retain the deputy in office to the Governor in March 1983, at least six months prior to the expiration of the term of office. The reappointment of the deputy in November was purely ministerial; the Governor had no discretion under the law to do otherwise. The notion that the Governor frustrated legislative intention is founded on the twin assumptions, both of which we reject, that the legislature did not know the statutory law concerning reappointments and that the Governor had discretion to reject the nominating commission report rendered four months prior to the enactment of the appropriations act.
Having cleared away some of the underbrush, we can now see the problem faced by appellants: they had five incumbents, all with equally valid appointments under the statute, but only four positions authorized under the appropriations act. Further, they had no guidelines or criteria from either the appropriations act or statute on how to select the deputy position to be abolished. Indeed, by its terms, section 440.45 denied the Governor the authority to remove any of the incumbent deputies. The record shows that appellants made a good-faith effort using principled criteria to follow the legislative proviso in the appropriations act. While it is true that some other decision maker might have arrived at a different decision, there is nothing in the record to warrant characterizing the decision as arbitrary or capricious. If we were to find that the Governor had the legal authority to terminate an incumbent deputy's term of office, we would not substitute our judgment for that of the responsible authorities in the executive branch.
The analysis above brings us to the true issue. Did the proviso in the appropriations act furnish legal authority for the Governor to truncate the term of office of any deputy commissioner? We conclude on two complementary grounds that it did not. First, the proviso furnished no guidance to the Governor as to the criteria to be used in reducing the number of deputies to the number of positions authorized by the appropriations act. The selection was left entirely to the unbridled discretion of the executive branch. In Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978), we reiterated our historically strict view that article II, section 3 of the Florida Constitution prohibits the delegation of legislative powers absent ascertainable minimal standards and guidelines. The situation in Askew is analogous to the present case. In Askew the executive branch was told to designate areas of critical state concern but was not given adequate criteria or guidelines on how to make those selections; here, the executive branch was told to reduce the number of deputies but was not given any criteria or guidelines on how to select the deputy positions to be abolished. Appellants argue that chapter 216, Florida Statutes (1983), furnishes adequate guidelines on reconciling proposed budgetary positions with positions actually authorized in the appropriations act. We disagree. Chapter 216 furnishes guidance on the procedures to be followed in the reconciliation process but furnishes no guidance which can be brought to bear on the selection of the deputy positions to be abolished. In Askew we rejected what is essentially the same argument: that Florida should adopt the thesis for delegation of legislative powers developed and espoused by Kenneth Culp Davis that "the danger of arbitrary or capricious administrative action is best met through procedural due process in the administrative process." Askew, 372 So.2d at 923. See K. Davis, Administrative Law of the Seventies § 2.04 at 30 (1976). We decline to adopt this thesis. As we did in Askew, we emphasize that it was not necessary *135 for the legislature to make the actual selection of the deputy positions to be abolished; it was only necessary that the legislature furnish ascertainable minimal criteria and guidelines on how the selection was to be made.
A second closely related ground for our decision is that the proviso in the appropriations act conflicts with substantive law contained in section 440.45. Appellants argue that the statutory language requires only that there be deputy commissioners and does not specify how many deputies there are to be. Thus, appellants urge, the proviso reducing the number of positions does not conflict with substantive law. What this argument overlooks is that section 440.45 severely restricts the power of a governor to remove deputies from office. There is no authority in substantive law for a governor to remove a deputy except for cause. The maxim that the express mention of one thing is the exclusion of another (expressio unius est exclusio alterius) is applicable. Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952). The clear legislative intent embodied in section 440.45 of ensuring that appointments and reappointments of deputy commissioners are based on merit would be nullified if governors were permitted to remove deputies for reasons other than that expressly authorized. Tyson v. Lanier, 156 So.2d 833, 836 (Fla. 1963); Singleton v. Larson, 46 So.2d 186, 189 (Fla. 1950). To allay the concerns of the legislature, which appeared as amicus curiae, we do not suggest that the legislature cannot abolish statutory offices which it has itself created prior to the expiration of an incumbent's term. The legislative power to do so is well established, both in logic and case law. City of Jacksonville v. Smoot, 83 Fla. 575, 92 So. 617 (1922). What we hold is that the legislature cannot abolish a statutory office through an appropriations act which amends or nullifies substantive law. Art. III, § 12, Fla. Const.; Brown v. Firestone, 382 So.2d 654, 664 (Fla. 1980); Department of Administration v. Horne, 269 So.2d 659, 662 (Fla. 1972).
One final point merits comment. In its final judgment, the trial court enjoined appellants on equitable grounds from appointing a successor to the deputy commissioner who resigned in February 1984. The authority of a governor to appoint deputy commissioners is embodied in law, section 440.45. Courts of equity have no power to overrule established law. Flagler v. Flagler, 94 So.2d 592 (Fla. 1957). Moreover, the injunction was unnecessary; the declaratory judgment and injunction founded on law adequately protected the rights of the appellee. The separation of powers doctrine is founded on mutual respect of each of the three branches for the constitutional prerogatives and powers of the other branches. Just as we would object to the intrusion of the executive or legislative branches into this Court's authority to promulgate rules of court procedures or to discipline parties before the courts as in contempt proceedings, we must be equally careful to respect the constitutional authority of the other branches. Art. II, § 3; art. V, §§ 1, 2, 3 and 15, Fla. Const.; Florida Motor Lines v. Railroad Commissioners, 100 Fla. 538, 129 So. 876 (1930); Markert v. Johnson, 367 So.2d 1003 (Fla. 1978); Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923). Courts should be loath to intrude on the powers and prerogatives of the other branches of government and, when necessary to do so, should limit the intrusion to that necessary to the exercise of the judicial power.[*]Forbes v. Earle, 298 So.2d 1, 5 (Fla. 1974); State ex rel. Davis v. City of Stuart, 97 Fla. 69, 97, 99, 120 So. 335, 346 (1929). We reverse the trial court on this point.
The judgment below is affirmed in part and reversed in part.
It is so ordered.
*136 BOYD, C.J., and ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
EHRLICH, J., concurs specially with an opinion.
EHRLICH, Justice, specially concurring.
The effect of our decision today is to declare that three vacant positions remain in District K. That the judicial nominating commission has not presented the governor with candidates to fill the three positions, which the governor would be obligated to fill pursuant to section 440.45, is a commentary on the restraint of the nominating commission. We find no express obligation for the nominating commission to provide the governor with a list of candidates within any prescribed time, see article V, section 11, Florida Constitution, and section 440.45, Florida Statutes (1983), but absent the elimination of these positions by act of the legislature, or the proper delegation of the power to the executive, there remains an unresolved conflict between the budgetary constraint of the legislature and the number of positions for deputy commissioners. While I doubt that the nominating commission would trigger a renewed constitutional conflict, the potential for such conflict remains until resolved by the legislature.
NOTES
[*] The trial court was apparently attempting to ensure that the number of incumbents was limited to the number of positions authorized by the appropriations act. This concern was unnecessary and intrusive because a governor has the discretionary authority, subject to conditions, under section 216.181(8), Florida Statutes (1983), to increase the amounts appropriated from state trust funds if deemed necessary and in the best interest of the state.