589 So.2d 260 (1991)
Lawton CHILES, etc., et al., Appellants,
v.
CHILDREN A, B, C, D, E, AND F, etc., Appellees.
No. 78792.
Supreme Court of Florida.
October 29, 1991.
*261 J. Hardin Peterson, Gen. Counsel, and Deborah K. Kearney, Deputy Gen. Counsel, Office of the Governor, Robert A. Butterworth, Atty. Gen., Richard E. Doran, Louis R. Hubener and Charles A. Finkel, Asst. Attys. Gen., and Robert P. Smith, Jr., Sp. Asst. Atty. Gen. of Hopping, Boyd, Green & Sams, Tallahassee, and Michael J. Neimand, Asst. Atty. Gen., Miami, Dept. of Legal Affairs, and Sydney H. McKenzie III, Gen. Counsel, Dept. of Educ., Tallahassee, for appellants.
Karen A. Gievers and Nancy La Vista of Karen A. Gievers, P.A., Miami, for appellee.
*262 Nancy S. Palmer of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, amicus curiae for State of Fla. guardian ad litem program.
Christina A. Zawisza, Children First Project Director, Legal Services of Greater Miami, Inc., Miami, and Cindy Huddleston, Anne Swerlick and Kathy Grunewald, Florida Legal Services, Inc., Tallahassee, amicus curiae for Children First: A Joint Project in Law, Medicine, and Educ. and Florida Legal Services, Inc.
Jack L. McLean, Jr., Kristine E. Knab and Edward J. Grunewald, Legal Services of North Florida, Inc., Tallahassee, amicus curiae for Orange Avenue United Tenants Ass'n, Inc. and Oliver Hill, Sr.
Pamela L. Cooper of Florida Teaching Profession-National Educ. Ass'n and Thomas W. Young, III and Sally Gertz of Florida Educ. Ass'n United, Office of Gen. Counsel, and Ronald G. Meyer of Meyer and Brooks, P.A., Tallahassee, amici curiae for Florida Teaching Profession-National Educ. Ass'n (FTP-NEA) and Florida Educ. Association/United (FEA/U).
John D. Carlson of Gatlin, Woods, Carlson & Cowdery, Tallahassee, amici curiae for Florida School Boards Ass'n, Inc. and The Florida Ass'n of Dist. School Superintendents, Inc.
Thomas R. Tedcastle, Jose Diez-Arguelles, Richard Herring, Thomas R. McSwain and Mitchell J. Rubin, Florida House of Representatives, Tallahassee, amici curiae for T.K. Wetherell, Speaker of the Florida House of Representatives and Ron Saunders, Chairman of the Committee on Appropriations of The Florida House of Representatives.
Jon L. Mills, Gainesville, amicus curiae.
Joseph W. Little, Gainesville, interested party.
BARKETT, Justice.
We have for review the order of the Eleventh Judicial Circuit, in and for Dade County, Florida, in which the court declared unconstitutional sections 216.011(1)(ll) and 216.221, Florida Statutes (1989). The order was appealed to the Third District Court of Appeal which, without deciding the merits, certified the issue to this Court as a matter of great public importance requiring immediate resolution.[1]Chiles v. Children A, B, C, D, E, and F, No. 91-2530 (Fla. 3d DCA Oct. 21, 1991).
Appellees, six of Florida's foster children (hereinafter "children"), sought declaratory and injunctive relief against the State's Governor, Secretary of State, Attorney General, Comptroller, Treasurer, Commissioner of Agriculture, Commissioner of Education, and all as members of the Administration Commission (hereinafter "Commission").[2] The trial court granted the children's request and held sections 216.011(1)(ll) and 216.221, Florida Statutes (1989), unconstitutional and enjoined the Commission from attempting to restructure the 1991 Appropriations Act pursuant to the budget reduction procedure established in chapter 216.
The state action that precipitated this case was the Governor's determination of an estimated $621.7 million general revenue shortfall in the fiscal 1991-92 state budget. In September 1991, the Governor directed all "state agencies," which by legislative definition in section 216.011(1)(ll), Florida Statutes (1989), includes the judicial branch, to prepare revised financial plans that would reduce their current operating budgets. On October 22, 1991, the Administration Commission[3] adopted the Governor's recommendations reducing the budgets established by the 1991 Appropriations Act, chapter 91-193, section 1, Laws of Florida.
*263 Initially,[4] the Commission challenges the appropriateness of the trial court order granting the children's request for declaratory relief.[5] The purpose of declaratory relief is "to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations" and thus the declaratory judgment statute is to be construed liberally. § 86.101, Fla. Stat. (1989). This Court has held that to "entertain a declaratory action regarding a statute's validity, there must be a bona fide need for such a declaration based on present, ascertainable facts or the court lacks jurisdiction to render declaratory relief." Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla. 1991). Additionally, this Court has upheld a grant of declaratory relief when the cause involved the public interest in the settlement of controversies in the operation of essential governmental functions and in the disbursement of public funds. See Overman v. State Bd. of Control, 62 So.2d 696 (Fla. 1952). We find the children have demonstrated the existence of present ascertainable facts which were sufficient to permit the trial court to afford declaratory relief.
The central issue in this case is whether the legislature, in passing section 216.221, violated the doctrine of separation of powers by assigning to the executive branch the broad discretionary authority to reapportion the state budget. Section 216.221(2), Florida Statutes (1989), provides in relevant part:
If, in the opinion of the Governor, after consultation with the revenue estimating conference, a deficit will occur in the General Revenue Fund, he shall so certify to the commission. The commission may, by affirmative action, reduce all approved state agency budgets and releases by a sufficient amount to prevent a deficit in any fund.

(Emphasis added.)
The principles underlying the governmental separation of powers antedate our Florida Constitution and were collectively adopted by the union of states in our federal constitution. See Mistretta v. United States, 488 U.S. 361, 380, 109 S.Ct. 647, 658-59, 102 L.Ed.2d 714 (1989). The fundamental concern of keeping the individual branches separate is that the fusion of the powers of any two branches into the same department would ultimately result in the destruction of liberty. E.g., Ponder v. Graham, 4 Fla. 23, 42-43 (1851); see The Federalist No. 47 (James Madison), No. 51 (Alexander Hamilton or James Madison). As Montesquieu succinctly noted:
There would be an end of everything, were the same... body ... to exercise those three powers, that of enacting laws, that of executing the public resolutions, and of trying the causes of individuals.
Charles de Montesquieu, L'Esprit des Lois 70 (Robert M. Hutchins ed., William Benton 1952) (1748).
The separation of powers doctrine is expressly codified in the Florida Constitution in article II, section 3:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of *264 the other branches unless expressly provided herein.

(Emphasis added.) The doctrine encompasses two fundamental prohibitions. The first is that no branch may encroach upon the powers of another. See, e.g., Pepper v. Pepper, 66 So.2d 280, 284 (Fla. 1953). The second is that no branch may delegate to another branch its constitutionally assigned power. See, e.g., Smith v. State, 537 So.2d 982, 987 (Fla. 1989). This case presents a separation of powers problem of the second type: a delegation of the legislative function.
Almost 300 years ago, in his Second Treatise of Government, John Locke explained the reasons for prohibiting such delegations of legislative authority:
The legislative cannot transfer the power of making laws to any other hands; for it being but a delegated power from the people, they who have it cannot pass it over to others. The people alone can appoint the form of the commonwealth, which is by constituting the legislative and appointing in whose hands that shall be. And when the people have said, we will submit to rules and be governed by laws made by such men, and in such forms, nobody else can say other men shall make laws for them; nor can the people be bound by any laws but such as are enacted by those whom they have chosen and authorized to make laws for them. The power of the legislative, being derived from the people by a positive voluntary grant and institution, can be no other than what that positive grant conveyed, which being only to make laws, and not to make legislators, the legislative can have no power to transfer their authority of making laws and place it in other hands.

John Locke, Two Treatises of Government 193 (Thomas I. Cook ed., Hafner Publishing Co. 1947) (emphasis added).[6]
This Court has repeatedly held that, under the doctrine of separation of powers, the legislature may not delegate the power to enact laws or to declare what the law shall be to any other branch. Any attempt by the legislature to abdicate its particular constitutional duty is void. Pursley v. City of Fort Myers, 87 Fla. 428, 432, 100 So. 366, 367 (1924); Bailey v. Van Pelt, 78 Fla. 337, 350, 82 So. 789, 793 (1919). As recently as 1978, in Askew v. Cross Key Waterways, 372 So.2d 913, 920-21 (Fla. 1978), we reaffirmed that the legislature, under article II, section 3 of our constitution, may not delegate its lawmaking function to another branch notwithstanding policy considerations or the fiscal operations of other states which do not have Florida's constitutional prohibitions against the delegation of powers. Thus we must ascertain whether section 216.221(2) delegates the legislative responsibility to establish law.
Article III, sections 1 and 7 assign to the legislature the responsibility for passage of all bills into law, regardless of their subject matter. Article III, section 8 sets forth the procedure for the executive power to approve or veto legislation of both nonappropriations and appropriations bills. Article IV, section 1(e) imposes a duty on the Governor to inform the legislature at least once in each regular session of the condition of the state. The Governor may also propose "reorganization of the executive department as will promote efficiency and economy, and recommend measures in the public interest." Id. These provisions, read in pari materia, constitute the full constitutional allocation of the executive and legislative responsibilities concerning legislation generally and appropriations bills specifically.
More specifically, the constitution provides that "[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law," art. VII, § 1(c), Fla. Const. (emphasis added), and that "[p]rovision *265 shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period." Art. VII, § 1(d), Fla. Const. (emphasis added).
Based on all these constitutional provisions, this Court has long held that the power to appropriate state funds is legislative and is to be exercised only through duly enacted statutes. State ex rel. Davis v. Green, 95 Fla. 117, 127, 116 So. 66, 69 (1928). As we stated in State ex rel. Kurz v. Lee:
The object of a constitutional provision requiring an appropriation made by law as the authority to withdraw money from the state treasury is to prevent the expenditure of the public funds already in the treasury, or potentially therein from tax sources provided to raise it, without the consent of the public given by their representatives in formal legislative acts. Such a provision secures to the Legislative (except where the Constitution controls to the contrary) the exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government.

121 Fla. 360, 384, 163 So. 859, 868 (1935) (emphasis added). Furthermore, the power to reduce appropriations, like any other lawmaking, is a legislative function. See Florida House of Representatives v. Martinez, 555 So.2d 839, 845 (Fla. 1990).
The Commission concedes that the power to legislate and to appropriate funds is initially vested in the legislature, but argues that the Governor has been made a part of the lawmaking process by the express provisions of article III, section 8 of the constitution. The article to which the Commission refers, however, is the provision which simply authorizes the Governor to veto legislation. We have previously made clear:
"[T]he veto power is intended to be a negative power, the power to nullify, or at least suspend, legislative intent. It is not designed to alter or amend legislative intent."
Martinez, 555 So.2d at 843 (quoting Brown v. Firestone, 382 So.2d 654, 664 (Fla. 1980)) (emphasis altered from original). Thus, it is well settled that the executive branch does not have the power to use the veto to restructure an appropriation. It follows that the legislature cannot provide by statute for the Governor and Cabinet to do at a later date what is forbidden by constitution during the initial appropriations process. Thus, although the constitution provides for executive branch participation in the lawmaking process through the exercise of the Governor's veto power, article III, section 8 does not authorize the legislature to delegate to the executive branch its authority to make decisions regarding the purposes for which public funds may or may not be applied. Lee; Green.
The Commission nevertheless argues that the ability to balance the budget through the reduction process of chapter 216 does not encompass a delegation of legislative power. Rather, it contends that reducing the budget is not the same as "appropriating."
We construe the power granted in section 216.221(2) as precisely the power to appropriate. The legislative responsibility to set fiscal priorities through appropriations is totally abandoned when the power to reduce, nullify, or change those priorities is given over to the total discretion of another branch of government.[7] Moreover, the constitutional efforts to set forth a deliberate veto and enforcement mechanism for the executive branch would seem an elaborate exercise in futility if the Governor and Cabinet, by stroke of the executive pen, could excise whole portions of the appropriations act and totally restructure legislative priorities. To permit the Commission to reduce specific appropriations in general appropriations bills would allow the legislature to abdicate its lawmaking function and would enable another branch to amend the law without resort to the *266 constitutionally prescribed lawmaking process. This delegation strikes at the very core of the separation of powers doctrine, and for this reason section 216.221 must fail as unconstitutional.
The facts of the present case are analogous to the facts of a number of previous decisions invalidating legislative delegations under the doctrine of separation of powers. In Askew v. Cross Key Waterways this Court addressed the constitutionality of sections 380.051(1) and 380.05(2)(a) and (b), Florida Statutes (1975), empowering the Administration Commission, acting on recommendation of the Division of State Planning, to designate certain geographical areas as being of critical state concern and to promulgate regulations for coordinated development of those lands. We declared those sections unconstitutional under article II, section 3 "because they reposit in the Administration Commission the fundamental legislative task of determining which geographic areas and resources are in greatest need of protection." 372 So.2d at 919. We held that
until the provisions of Article II, Section 3 of the Florida Constitution are altered by the people we deem the doctrine of nondelegation of legislative power to be viable in this State. Under this doctrine fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.
Id. at 925 (emphasis added).
In Orr v. Trask, 464 So.2d 131, (Fla. 1985), this Court invalidated the Governor's attempt to extinguish the term of office of the deputy commissioner of workers' compensation. The Governor purported to be acting pursuant to the 1983 General Appropriations Act which reduced the number of deputy commissioner positions from five to four. The issue was whether the proviso in the appropriations act furnished legal authority for the Governor to truncate Trask's term of office. The Court concluded that it did not, holding that although "it was not necessary for the legislature to make the actual selection of the deputy positions to be abolished; it was ... necessary that the legislature furnish ascertainable minimal criteria and guidelines on how the selection was to be made." Id. at 134-35. Thus, because the appropriations act did not furnish guidelines to the Governor as to the criteria to be used in reducing the number of deputy positions, the authorization for such reduction in the appropriations act violated the separation of powers doctrine in article II, section 3. Id.
In Lewis v. Bank of Pasco County, 346 So.2d 53, 54 (Fla. 1976), the Court adopted in full the opinion of the Second Judicial Circuit declaring section 658.10(1), Florida Statutes (1975), unconstitutional. At issue in Lewis was a statute granting to the Comptroller the authority to release to the public and the news media otherwise confidential bank or trust company records. The trial court invalidated the statute under the doctrine of separation of powers as "`attempting to grant to the ... [Comptroller] the power to say what the law shall be.'" 346 So.2d at 56 (quoting Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974)). To quote the trial court:
As the statute is written, it makes a vast volume of private records, necessarily subject to governmental inspection confidential, but then gives the Comptroller unrestricted and unlimited power to exempt particular records and items of information from the operation of that provision of the statute making them confidential.
In other words, the Department [of Banking] is given power from day to day to say what is the law as to the confidential nature of any records of banks which the Department has the right to inspect or include in the reports of bank examinations.
The Constitution does not permit this delegation of legislative power.
Id. 346 So.2d at 55.
Each of the cases cited above, Askew, Orr, and Lewis, describes a situation in which there is inadequate legislative direction *267 to the executive branch to carry out the ultimate policy decision of the legislature. They left total discretion to executive branch officials. That is, the statutes did not indicate which land to designate as areas of critical state concern in Askew, or which position to cut in Orr, or which confidential information could be released in Lewis. Likewise, in this case, section 216.221 does not indicate which budgeting priorities to maintain or to cut from the original appropriation.
The Commission argues that State ex rel. Caldwell v. Lee, 157 Fla. 773, 27 So.2d 84 (1946), supports the constitutionality of the delegation in the present case. We find Caldwell inapposite because that case dealt with the delegation of authority over "unneeded balances or surpluses" to be applied in accordance with specified legislative intent. In Caldwell, a prerequisite to the board's[8] use of the funds was that all legislative priorities and mandates established in the appropriations act had to be met before the board could act. In this case, no surpluses have been claimed to exist, and the facts indicate that entities of state government will not even be able to fulfill their legal responsibilities. Moreover, there is no express legislative policy that is being carried out. It is, in fact, the Commission which is setting policy.
We note again that it is the legislature's constitutional duty to determine and raise the appropriate revenue to defray the expenses of the state. Art. VII, § 1(d), Fla. Const. ("Provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period.") (emphasis added). This provision directs the legislature  the only branch with the power to make law  and not the executive, to make appropriations for revenue. By its plain wording, article VII, section 1(d) does not authorize the Governor to reduce expenses or to reduce appropriations in order to balance the budget. Rather, quite clearly, it requires the legislature either to reduce the appropriations or to raise "sufficient revenue" to satisfy the appropriations it deems necessary to run the government.
Under any working system of government, one of the branches must be able to exercise the power of the purse, and in our system it is the legislature, as representative of the people and maker of laws, including laws pertaining to appropriations, to whom that power is constitutionally assigned. We do not today state that the Governor and Cabinet have no role to play in the budgetary process. For example, section 216.292, Florida Statutes (1989), provides for limited transfers within budget entities under specific circumstances.
Furthermore, the Governor is not without recourse if he or she determines that an appropriation has been erroneously or irresponsibly made such that sufficient revenue to defray the expenses of the state for the fiscal period in question will not be available. As we have observed, the Governor may, pursuant to article III, section 8, veto a bill at the time of its passage or, in fulfillment of the duty to take care that the laws are faithfully executed under article IV, section 1(a), and in exercise of the authority granted under article III, section 3(c)(1), call the legislature into special session to balance the budget for the remainder of the fiscal period. The Governor and Cabinet, sitting as the Administration Commission, however, may not be assigned the task of redrafting the appropriations bill once it has passed the legislature and has been approved by the Governor, an avenue that section 216.221 attempts to open for the Commission.
The constitution specifically provides for the legislature alone to have the power to appropriate state funds. More importantly, only the legislature, as the voice of the people, may determine and weigh the multitude of needs and fiscal priorities of the State of Florida. The legislature must carry out its constitutional duty to establish fiscal priorities in light of the financial resources it has provided.
Consequently, we find that section 216.221 is an impermissible attempt by the legislature to abdicate a portion of its lawmaking *268 responsibility and to vest it in an executive entity. In the words of John Locke, the legislature has attempted to make legislators, not laws. As a result, the powers of both the legislative and executive branches are lodged in one body, the Administration Commission. This concentration of power is prohibited by any tripartite system of constitutional democracy and cannot stand.
This is not to say that the legislature cannot permit another branch or agency to respond to a budget crisis caused by unexpected events between legislative sessions. The legislature can delegate functions so long as there are sufficient guidelines to assure that the legislative intent is clearly established and can be directly followed in the event of a budget shortfall.[9] Carefully crafted legislation establishing, among other things, the extent to which appropriations may be reduced, coupled with a recitation of reduction priorities and provisions for legislative oversight, might pass facial constitutional muster. What the legislature cannot do is delegate its policy-making responsibility.
We likewise affirm the trial court's judgment finding that section 216.011(1)(ll), Florida Statutes (1989), which defines the term "state agency" as used throughout chapter 216, is also unconstitutional. Section 216.011(1)(ll) provides:
"State agency" or "agency" means any official, officer, commission, board authority, council, committee, or department of the executive branch, or the judicial branch, as herein defined, of state government.[10]
This section, on its face, flagrantly violates the doctrine of separation of powers. The inclusion of the judicial branch within the definition of "state agency," and hence the placing of the judiciary's fiscal affairs under the management of the executive branch, disregards the constitutional mandate of coordinate power-sharing. Under the constitution, the judiciary is a coequal branch of the Florida government vested with the sole authority to exercise the judicial power. Art. V, § 1, Fla. Const. In accordance with the constitution, it is the chief justice of the supreme court who is the chief administrative officer of the judicial system. Art. V, § 2(b), Fla. Const. Because section 216.011(1)(ll) encompasses the judicial branch within its definition of "state agency," it violates the constitutional doctrine of separation of powers. Thus, all other sections of chapter 216 which, by operation of section 216.011(1)(ll), subject the judicial branch to executive oversight, are also unconstitutional.
The legislature was obviously cognizant of separation of powers principles in drafting section 216.011(1)(ll), as evidenced by the fact that the legislature itself is conspicuously absent from the definition of "state agency." Indeed, while section 216.011(1)(ll) treats the judicial branch as a subordinate agency subject to executive authority, the legislative branch, throughout chapter 216, is expressly exempted from similar executive control. For example, section 216.081(2), Florida Statutes (1989), provides:
All of the data relative to the legislative branch shall be for information and guidance in estimating the total financial needs of the state for the ensuing biennium; none of these estimates shall be subject to revision or review by the Governor, and they must be included in his recommended budget.
(Emphasis added.) Apparently, the legislature recognized the threat to its own constitutional sovereignty and, in passing chapter 216, excluded itself from executive review. In doing so, the legislature has only succeeded in emphasizing the constitutional infirmity of attempting to relocate, by legislative fiat, the coequal powers of the judiciary within the executive branch. But the legislature cannot, short of constitutional amendment, reallocate the balance of power *269 expressly delineated in the constitution among the three coequal branches. The judicial branch cannot be subject in any manner to oversight by the executive branch. The submission of the judicial budget, like the legislature's, may be provided to the Governor for information and guidance, but cannot be subject to revision, reduction, or review by the Governor. Moreover, to maintain the independence of the judiciary, any reduction in the judicial budget mandated by the legislature must be made by the chief justice and cannot be delegated to the executive branch.
Finally, we note that even absent the constitutional infirmities of chapter 216, any substantial reductions of the judicial budget can raise constitutional concerns of the highest order. This Court has an independent duty and authority as a constitutionally coequal and coordinate branch of the government of the State of Florida to guarantee the rights of the people to have access to a functioning and efficient judicial system.[11] Article I, section 21 of the Florida Declaration of Rights provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." (Emphasis added.)
We are not unmindful of the difficult conditions which precipitated the Commission's actions and we recognize that the Commission has acted in good faith in attempting to address the fiscal crisis which besets this state. We are, however, called upon to rule based on legal principles which are enduring and cannot be bent to accomplish transient needs. Otherwise, we in the judiciary would be arrogating to ourselves, not merely the power of the legislature to make laws, but the power of the people to change the constitution. It would indeed be easier and more practical to permit the Commission to rewrite the appropriations bill. We are prohibited by our constitution from doing so.
Accordingly, we affirm the trial court's order holding sections 216.011(1)(ll) and 216.221, Florida Statutes (1989), unconstitutional as a violation of the doctrine of separation of powers.
Any budgetary actions taken pursuant to these statutes subsequent to the injunctive relief granted by the trial judge cannot be implemented.
It is so ordered.
SHAW, C.J., and GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., concurs with an opinion.
McDONALD, J., dissents with an opinion.

NO MOTION FOR REHEARING WILL BE ALLOWED.
OVERTON, Justice, concurring.
I fully concur in the majority opinion. I write only to emphasize that the reason section 216.221(2), Florida Statutes (1989), is unconstitutional is because it grants the Governor and Cabinet unlimited legislative policy-making discretion. Other states apparently have addressed the issue of budget adjustments in a constitutional manner without requiring a special legislative session. The extent of the Governor's and Cabinet's legislative policy-making authority granted by section 216.221(2) is illustrated by the total elimination of funds appropriated by the legislature for emergency housing for homeless families with children, as well as the elimination of a special appropriation for additional aid to dependent children. Each of these decisions is not a minor adjustment in the budget; they substantially affect legislative intent and effectively repeal legislative action.
As noted by Justice McDonald in his dissent, there clearly is a need to maintain a balanced budget, but this statute, and the broad authority it gives to the Governor and the Cabinet, is not the only manner in which budget adjustments can be made. Former Speaker of the House Jon Mills, as an amicus curiae, citing a National Conference of State Legislatures study relating to *270 legislative budget procedures in the fifty states,[12] noted that other states have addressed this problem in more restrictive ways without having to call the legislative body into session. While section 216.221(2) is unconstitutional, it does not mean that the legislature must reconvene every time there is a need for budget adjustments. I believe the legislature can establish a process with specific guidelines for making budget adjustments that is constitutional.
McDONALD, Justice, dissenting.
Section 216.221, Florida Statutes (1989), involves a statutory scheme which permits the reasonable exercise of appropriately shared authority between the executive and legislative branches. The need to maintain a balanced budget is one which is strongly ensconced in Florida's history; it is a protection for the public, and particularly for future generations, which must be guaranteed to the greatest extent possible. Section 216.221 provides the framework for such protection and I believe it is constitutional. This section does not constitute an unconstitutional delegation of legislative power to the Commission, even as applied to reduce the amount of money released to the judicial branch of government.
The balanced budget measure of the Florida Constitution, article VII, section 1(d) is found in neither the legislative nor executive article of the Constitution. Hence, the Constitution imposes the obligation to operate within a balanced budget upon all entities and agencies of state government. One plain mandate of article VII, section 1(d) is to impose upon the legislature the initial requirement to adopt a balanced budget and provide sufficient funds to finance it. Nevertheless, the Constitution anticipates that a post-adoption budget deficit may occur and imposes correlative powers and responsibilities in the Governor to deal with a deficit in the absence of legislative action. More specifically, the Governor is vested with the "supreme executive power" of the state and is charged by the Constitution with the responsibility to "take care that the laws be faithfully executed." Art. IV, § 1(a), Fla. Const.
It cannot be denied that the balanced budget provision of the Florida Constitution is a state law of great weight and importance. It necessarily follows that the Governor, acting with the Commission, is both obligated and empowered by the Constitution itself to assure that the balanced budget mandate of the Constitution is faithfully executed. If the legislature were to refuse to adopt measures necessary to balance an unbalanced budget, the Governor would not be relieved of the constitutional obligation to employ the supreme executive power of the state to assure the budget was balanced. The mandates of the Constitution prevail over both the legislative and executive branches of government. In that regard section 216.221(1) is declarative of the constitutional power and responsibility reposed in the Governor.
The present controversy is not one involving the unwelcome intrusion of one branch on another. In State v. Lee, 157 Fla. 773, 27 So.2d 84 (1946), we held that a law allowing for the transfer of funds among budget entities was not an unlawful exercise of legislative power by the executive. A transfer from fund to fund or program to program is certainly more a matter of quasi-legislative action than is the reduction of an appropriation which by law is a maximum appropriation. There must be a guard standing at the door to prevent the expenditure of funds which are not on hand and are not forthcoming. The legislation under attack recognizes this.
My colleagues declare section 216.221 unconstitutional because they perceive the Commission as performing a legislative function or doing so with inadequate guidance. Although neither the Governor nor the Attorney General complains, I have some residual doubts that the Commission should be involved, but have no doubt that the Governor has a constitutional obligation to preclude the expenditure of funds *271 in excess of revenue. Should the statute fall, he still has this constitutional mandate to assure that no more money is spent than is taken in. Thus, I see little to gain by striking down section 216.221.
For budgetary purposes alone, I believe it permissible to define the judicial branch as a state agency and subject to all of the laws relative to the budget process.
I would reverse the decision under review and find the statutes under review constitutional.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution.
[2] The Administration Commission is created pursuant to section 14.202, Florida Statutes (1989), as part of the Executive Office of the Governor and is composed of the Governor and Cabinet.
[3] The vote was by a majority that did not include the Secretary of State or the Commissioner of Education.
[4] The Commission has waived its original argument that venue was improperly laid in Dade County "in order that the Court may address the more significant issues posed by this case." We note in passing that the "sword-wielder" exception would not apply to the facts of this case. Florida Public Serv. Comm'n v. Triple "A" Enters., Inc., 387 So.2d 940 (Fla. 1980); Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla. 1977).
[5] The Commission does not contend that the children lack standing to challenge the statute in their capacity as taxpayers. This Court has long held that a citizen and taxpayer can challenge the constitutional validity of an exercise of the legislature's taxing and spending power without having to demonstrate a special injury. Brown v. Firestone, 382 So.2d 654 (Fla. 1980); Department of Admin. v. Horne, 269 So.2d 659 (Fla. 1972); see Rosenhouse v. 1950 Spring Term Grand Jury, 56 So.2d 445 (Fla. 1952); Yon v. Orange County, 43 So.2d 177 (Fla. 1949); State ex rel. Hill v. Cone, 140 Fla. 1, 191 So. 50 (1939). The budget reductions ordered pursuant to section 216.221, Florida Statutes (1989), go to the very heart of the legislature's taxing and spending power, and thus the children have standing to invoke this constitutional challenge.
[6] As Justice Scalia has set forth in more modern garb in discussing the federal separation of powers:

The Constitution... . as its name suggests ... is a prescribed structure, a framework, for the conduct of government. In designing that structure, the framers themselves considered how much commingling was, in the generality of things, acceptable, and set forth their conclusions in the document.
Mistretta v. United States, 488 U.S. 361, 426, 109 S.Ct. 647, 682 (1989) (Scalia, J., dissenting).
[7] As noted in several amicus briefs, some of the Commission's reductions totally eliminate legislatively established programs. For example, the Emergency Financial Assistance for Housing Programs mandated by the legislature to address this state's housing needs would be completely abolished.
[8] The Board of Commissioners of State Institutions was the delegatee in that case.
[9] We reject the Commission's assertion that section 216.221 contains sufficient guidelines.
[10] Section 216.011(1)(s), Florida Statutes (1989), defines "judicial branch" to include "the various officers, courts, commissions, or other units of the judicial branch of state government supported in whole or in part by appropriations made by the Legislature."
[11] We recognize that there may be items placed in the judicial budget that, although they serve important governmental functions, are not absolutely essential to the constitutional duties of the judiciary.
[12] National Conference of State Legislatures, Fiscal Affairs Program, Legislative Budget Procedures in the 50 States: A Guide to Appropriations and Budget Processes (1988).