625 So.2d 1299 (1993)
The HILLHAVEN CORPORATION, Health Care and Retirement Corporation of America, United Health, Inc., Diversicare Corporation, Americare Corporation, the Waverly Group, Inc., Heartland Health Care Center, et al., Petitioners/Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Respondent/Appellee.
Nos. 92-2167, 92-2168, 92-2181, 92-2182, 92-2184 through 92-2186, 92-2247, 92-2296 through 92-2298.
District Court of Appeal of Florida, First District.
November 1, 1993.
*1300 Thomas C. Fox, Joel M. Hamme, Joyce E. Mayers and Michael D. Smith of Reed Smith Shaw & McClay, Washington, DC, for Hillhaven and HCRA.
Alfred W. Clark, Tallahassee, for HCRA, Americare, Diversicare, Waverly, and Heartland.
W. David Watkins of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee, for United Health.
David G. Pius, Sr. Atty., Dept. of Health and Rehabilitative Services, Tallahassee, for respondent/appellee.
ERVIN, Judge.
The appeals in these cases, which were consolidated below and on appeal, involve a number of Florida nursing homes that are challenging the validity of emergency rule 10CER89-21 and permanent rule 10C-7.0482, adopted by appellee, the Department of Health and Rehabilitative Services (HRS). The rules eliminated a semiannual inflationary adjustment for appellants' per diem Medicaid rates, effective January 1, 1990 through June 30, 1990. Appellants claim that the rules are an invalid exercise of delegated legislative authority, because they implement a statute which was determined violative of the doctrine of separation of powers. In the alternative, they assert that the rules are invalid because HRS did not comply with federal law when implementing the rate freeze. We agree with appellants' first issue and, thus, do not reach their second.
The parties stipulated to the following facts. The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396s, is a cooperative, federal-state program whereby the federal government provides matching funds to states furnishing medical services to needy residents. Under the 1988 Medicaid plan, long-term care providers, such as appellants, are reimbursed under a prospective reimbursement methodology. Rates are set in advance of the rate semester, based upon historical cost-data trended forward for inflation, with no retroactive adjustment to account for actual costs. The plan requires semiannual inflationary adjustments in Florida nursing home rates, effective January 1 and July 1 of each year. The plan was used to establish appellants' Medicaid rates during the period from January 1, 1988 through December 31, 1989. In conformity with the plan, the state legislative appropriation for the fiscal year 1989-1990 included funds to reimburse Medicaid long-term care facility providers for the fiscal year beginning July 1, 1989 through June 30, 1990. Thereafter, during the 1989-90 fiscal year, Florida experienced a shortfall in general revenue collections,[1] causing Governor Martinez to certify that a deficit would occur in the state budget. HRS, in addition to all other state agencies, was asked to provide cost-containment alternatives to the Administration Commission (AC), consisting of the governor and members of the cabinet. Among the alternatives listed, HRS recommended amending the Medicaid plan to require a freeze in nursing-home Medicaid re-imbursement rates, beginning January 1, 1990, for an indefinite period. On November 21, 1989, the AC accepted the proposal and reduced HRS's budget accordingly, pursuant to Section 216.221(2), Florida Statutes (1989), which provides in part: "The commission may, by affirmative action, reduce all approved state agency budgets and releases by a sufficient amount to prevent a deficit in any fund."
*1301 To comply with pertinent procedure for effectuating the freeze, HRS published notice in the Florida Administrative Weekly of emergency rule 10CER89-21 on December 22, 1989, and permanent rule 10C-7.0482, on February 2, 1990. In its first notice, HRS stated, in part:
A shortfall in general revenue requires the state to reduce or eliminate payment for needed services to Medicaid recipients... . Based upon a recent decision made by the Governor and Florida Cabinet, Medicaid rates were frozen at the December 31, 1989 levels for all providers of these institutions... . This emergency rule freezes Medicaid reimbursement rates for nursing home providers effective January 1, 1990 in accordance with budget reductions mandated by the Administrative Commission on November 21, 1989.
15 Fla. Admin. Weekly 6016-17 (Dec. 22, 1989). As a consequence of the suspension in funding, appellants did not receive an inflationary adjustment in their per diem rates which would otherwise have been due under the 1988 Medicaid plan for the period January 1, 1990 through June 30, 1990. The rate freeze ended on July 1, 1990, when the plan was amended to delete the budget reduction, and appellants' rates in subsequent rate semesters were calculated as if the rate freeze had never occurred. Appellants, however, received no retroactive reimbursement for the period in question.
Appellants initially filed their challenges to the amendment to the Medicaid plan in February 1990 and, after a hearing and an appeal, consolidated their rate challenges for monetary relief under Section 120.57, Florida Statutes (1989), and their rule challenges under Section 120.56, Florida Statutes (1989), into one proceeding in December 1991 before a Department of Administrative Hearings hearing officer (HO). In lieu of testimony, the parties filed a stipulation of facts and joint exhibits. The HO issued final orders denying appellants' section 120.56 rule challenges and section 120.57 rate challenges, both of which are the subjects of this appeal.
In their 120.56 rule challenges, appellants claimed that HRS's emergency and permanent rules were invalid under the decision of Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260 (Fla. 1991), holding that section 216.221 was facially unconstitutional because it violated the doctrine of separation of powers. Appellants also challenged the rules as invalid, because they contravened the specific provisions of law authorizing implementation of the rule, Sections 409.026(1) and (6),[2] and Section 409.266, Florida Statutes (1989).[3] Appellants' additional arguments are not pertinent to this opinion.
While properly deciding that he had no jurisdiction to consider the constitutional challenge,[4] the HO also determined that Chiles could not be applied retroactively because he considered the opinion to have prospective application only. As a result, the HO ruled that Chiles, decided after the adoption of the rules but before the commencement of the December 1991 proceeding, was not applicable to the pending cases and therefore concluded that the emergency and permanent rules were properly enacted to ensure that HRS implement the Medicaid program under section 409.266(1), by providing reimbursements only to the extent that funds were appropriated. We hold that Chiles does not operate prospectively only, but rather that it applies to invalidate the rules at issue.
In Chiles, the facts disclose that the governor determined that a general revenue shortfall existed in the fiscal 1991-92 state budget and, accordingly, directed state agencies to *1302 revise their financial plans to reduce their current operating budgets in order to bring the budget into balance. The AC adopted the governor's recommendations and the agencies' budgets were reduced to amounts less than those established by the 1991 Appropriations Act. Six foster children affected by the reductions thereupon brought actions for declaratory and injunctive relief against the AC. The trial court granted the children's request, held section 216.221 unconstitutional, and enjoined the AC from implementing the budget reductions. On appeal, the supreme court held that section 216.221 was unconstitutional, because it delegated the power to reapportion the state budget to the executive branch of the government, whereas the Constitution only permits the legislature to appropriate state funds by duly enacted statutes. The court concluded as follows:
Accordingly, we affirm the trial court's order holding sections 216.011(1)(11)[[5]] and 216.221, Florida Statutes (1989), unconstitutional as a violation of the doctrine of separation of powers.
Any budgetary actions taken pursuant to these statutes subsequent to the injunctive relief granted by the trial judge cannot be implemented.
Id. at 269 (footnote added).
It was the latter paragraph from the above portion of Chiles which the hearing officer determined was an express statement that the decision was to operate prospectively. We cannot agree. On the contrary, we regard the above as a simple statement of the court's holding, articulating only the effect of its affirmance of the trial court's injunction. It clearly indicates that any reductions or elimination of programs made by an agency in response to the acts of the governor and AC were void. In our judgment, this paragraph should not be understood as broadly precluding consideration of any other legal challenges to executive actions taken pursuant to section 216.221.
Even if Chiles were considered as having prospective application, it is well established that an appellate court is required to apply the law in effect at the time of its decision, rather than the law prevailing at the time the judgment was rendered below. See Florida E. Coast Ry. v. Rouse, 194 So.2d 260, 262 (Fla. 1967) (on rehearing); In re Forfeiture of the Following Described Property: 1985 Mercedes Serial No. WDB7AQ4C1FF070173, 596 So.2d 1261, 1264 (Fla. 1st DCA 1992) (and cases cited therein). Under this doctrine, this court is required to apply the Chiles decision to the issue at bar.
The fact that Chiles held section 216.221 facially invalid, whereas the action at bar involves an attack on two rules implementing section 216.221 as an invalid exercise of delegated legislative authority, does not render the Chiles rule inapplicable to the instant case. Section 120.52(8), Florida Statutes (1989), provides, in part:
"Invalid exercise of delegated legislative authority" means action which goes beyond the powers, functions, and duties delegated by the Legislature. A proposed or existing rule is an invalid exercise of delegated legislative authority if any one or more of the following apply:
* * * * * *
(c) The rule enlarges, modifies, or contravenes the specific provisions of law implemented[.]
One of the provisions of law which the rules also implemented was section 409.266, which details the requirements of the Medicaid program in Florida. Section 409.266(1) provides:
The department [HRS] is designated as the state agency responsible for the administration of Medicaid funds under Title XIX of the Social Security Act and, to the extent moneys are appropriated, is authorized to provide payment for medical services to any [eligible] person[.]
(Emphasis added.)
The legislature appropriated sufficient funds to HRS for the fiscal year 1989-1990 for the purpose of reimbursing the providers at bar. Although HRS did not explicitly cite section 216.221 as one of the laws implemented by the emergency and permanent rules, the text of the notice of emergency rulemaking *1303 stated that the rule was being promulgated pursuant to the AC's decision to freeze the Medicaid rates. The parties specifically stipulated below that the budget-reduction procedure was authorized by section 216.221. The only authority given to the executive branch of government to reduce the state budget is derived from section 216.221. By freezing the rates at the 1989 levels, at the behest of the AC, thus allowing excess funds to be distributed elsewhere, HRS reduced its own legislative appropriation. As Chiles clearly indicates, neither HRS nor the AC had the constitutional authority to so act. Hence, HRS's rules contravened section 409.266(1) by unlawfully interfering with the legislative appropriations process, and thereby constituted an invalid exercise of delegated legislative authority.
Accordingly, we strike the emergency and permanent rules, and direct HRS to reinstate the Medicaid rates in the amount which appellants were entitled to before the freeze took effect.
REVERSED.
JOANOS and WOLF, JJ., concur.
NOTES
[1] The revenue shortfall for fiscal year 1989-90 was $280 million, and HRS's share of the deficit was $64 million. 15 Fla. Admin. Weekly 6016 (Dec. 22, 1989).
[2] Sections 409.026(1) and (6) authorize HRS to administer all social and economic services within the state; to accept duties delegated to it by any agency of the federal government; and to conduct and administer social and economic service activities to secure public assistance from the federal government.
[3] Section 409.266 designates HRS as the state agency responsible for administering Medicaid funds and requires HRS to purchase medical services for eligible persons in the most cost-effective form consistent with the delivery of quality medical care.
[4] Although a hearing officer may not determine the facial constitutionality of a statute, this court may consider such issue on direct review. Key Haven Associated Enters. v. Board of Trustees of Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla. 1982).
[5] This provision included the judicial branch within the term, "state agency."