HARDING, C.J.
The Florida Senate and Senate President Toni Jennings petition this Court for a writ of mandamus ordering the Florida Secretary of State to expunge from the official records the gubernatorial veto directed at portions of the proviso language in Line Item 117C of the 1999-2000 General Appropriations Act, chapter 99-226, Laws of Florida (the Act). Petitioners also request that the writ order the Florida Comptroller to ensure that this ex-punction is reflected in the state financial operations. Governor Jeb Bush[1] counter-petitions for a writ of mandamus which would require the expunction of a proviso to Line Item 117C of the Act as unconstitutional. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const.
Line Item 117C involves a $40 million appropriation for an extended school year program in Florida public schools. Under this program, participating schools would extend the academic year for students from 180 to 210 days. A sum of $500,000 was earmarked for summer training programs for representatives from the schools implementing the extended school year. The remaining fund of $39.5 million was earmarked “for both planning and operations grants” for participating schools. Fla. SB 2500, § 2, at 49, line 117C (1999). The proviso specifies that eligibility for such grants is limited to the 234 schools that expressed an interest in an extended school year in response to a February 1999 survey by the Department of Education. However, in order to receive funds from this appropriation, the eligible schools were required to submit to the Commissioner of Education by August 1, 1999, a letter of commitment to extend the school year and to file an implementation plan by January 1, 2000. The proviso also includes a formula for determining how much money will be available for planning grants to participating schools based upon student population and a second formula for calculating each school district’s allocation for the operation of an extended school year. In the event that the amount required to fund the planning and operation grants for all eligible schools exceeds the amount of the appropriation, the proviso authorizes the Commissioner to “fund the cost of extended school year operations on a first-come first-served basis.” Id. at 50.
In his May 27, 1999, veto message, Governor Bush vetoed the $500,000 summer training program and $16,140,000 for operation grants. The Governor let stand $23,-360,000 for extended school year planning grants. The Senate challenges the veto of the operation grants as a violation of the Florida Constitution.
*629 Article III, section 8(a) of the Florida Constitution provides in pertinent part that “[t]he governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates.” As explained by this Court in Brown v. Firestone, 382 So.2d 654, 664 (Fla.1980), the governor’s constitutional “veto power is intended to be a negative power, the power to nullify, or at least suspend, legislative intent. It is not designed to alter or amend legislative intent.” See also Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260, 265 (Fla.1991) (“[I]t is well settled that the executive branch does not have the power to use the veto to restructure an appropriation”). Thus, where the Legislature attaches “a rationally and directly related qualification or restriction to [an] appropriation ... the governor [must] make the hard choice whether to give up the appropriation entirely or to follow the legislative direction for its use.” Brown, 382 So.2d at 667.
In Broum, this Court adopted the following rule to determine what constitutes a “specific appropriation” for purposes of a gubernatorial veto:
A specific appropriation is an identifiable, integrated fund which the legislature has allocated for a specified purpose.
Id. at 668. However, we later recognized that “[t]his rule, while simple in theory, has been somewhat more difficult to apply in actual practice.” Florida House of Representatives v. Martinez, 555 So.2d 839, 843 (Fla.1990). This difficulty increases when the Legislature appropriates a sum of money “under a vague or broad line-item category and then specifies in proviso language the precise way this money may be spent.” Id. As explained in Martinez, proviso language which expressly breaks the line item into a definite unit intended for a stated purpose clearly constitutes a specific appropriation. See id. In contrast, where the proviso language does not identify a sum of money but merely specifies that some un identified portion of the line item shall be used for particular purposes, the governor is not permitted to veto the language. See id. at 844.
In the instant case, the parties agree that the Governor’s veto of the summer training program was permissible. The proviso language at issue in this veto clearly falls within the first category discussed above: the proviso broke the line item appropriation of $40 million into the smaller definite unit of $500,000, which was earmarked for the stated purpose of the summer training program. This proviso, thus, constituted a specific appropriation as stated in Broum and could properly be vetoed by the Governor pursuant to article III, section 8(a).
The real issue in the instant case is the constitutionality of the Governor’s veto of the operations grants. Unlike the summer training program, the proviso does not expressly state the amount of the remaining $39.5 million that has been assigned to the operations grants. The proviso does explain the formula by which the planning grants for the participating schools will be calculated[2] and includes a formula for calculating the allocation to districts for the operation of an extended school year. The Governor contends that this operations grants funding formula unconstitutionally amends the statutory funding process of the Florida Education Finance Program (FEFP).[3] The Governor vetoed the operations grants for this reason.
*630 In assigning a dollar amount to the operations grants, the Governor calculated a figure of $23,360,000 for planning grants for the 234 eligible schools based upon school population information supplied by the Department of Education to the Senate and the formula contained in the proviso. The Governor then subtracted this figure and the summer training program figure from the $40 million fund and vetoed the remainder of $16,140,000 that he calculated to be earmarked for the operations grants. The Senate contends that there was no amount specified for operations grants alone and that the entire $39.5 million fund is a specific appropriation.
In calculating the amount he vetoed for the operations grants, the Governor had to look beyond the face of the proviso itself. As stated in his brief, the Governor referred to documents from the Department of Education and the Senate’s working papers and intent documents. As we explained in Martinez, “no matter how accurate the Governor’s monetary estimate [of a proviso] might be,” he may not veto a proviso or portion of a proviso by “supplying his own ‘estimate’ of its monetary cost.” 555 So.2d at 844. Before the Governor can veto specific proviso language “that language on its face must create an identifiable integrated fund—an exact sum of money-that is allocated for a specific purpose.” Id.
Here, the proviso language itself also convinces us that the $39.5 million was “an identifiable, integrated fund which the legislature has allocated for [the] specific purpose” of an extended school year program. See Brown, 382 So.2d at 668. The proviso language specifically states that the “[f]unds in Specific Appropriation 117C are provided for both planning and operations grants.” Fla. SB 2500, § 2, at 49, line 117C (1999) (emphasis added). Moreover, the legislature intentionally structured the funding scheme to encompass both the planning and operations grants. While 234 schools were eligible to participate in the extended school year program, the Legislature did not know the exact number that would choose to participate and apply for the grants. In order to accommodate this uncertainty, the Legislature created a fund that was fluid between the planning and operations grants. After the planning grants were distributed to the participating schools, the remaining funds would be used for operations grants. In fact, the Legislature recognized that if every eligible school chose to participate in the program and received a planning grant, then the allocation would not provide operations grants for all of the participating schools. Thus, the Legislature authorized the Commissioner of Education to “fund the cost of extended school year operations on a first-come first-served basis.” Fla. SB 2500, § 2, at 50, line 117C (1999). This funding structure indicates that the $39.5 million is a specific appropriation as defined in Brown.
Moreover, “a fund is not ‘integrated’-it is not a ‘specific appropriation’-unless it consists of all those elements necessary to achieve the stated purpose.” Martinez, 555 So.2d at 845. Here the Legislature’s purpose was to expend this money for an extended school year program, during both the planning and the operations phases. The Governor could properly have vetoed the whole appropriation for the extended school year program, thereby nullifying the legislative intent. However, he may not alter or amend this legislative intent by separating out the operations component from the appropriation. Thus, we conclude that the Governor’s veto of the operations grants was unconstitutional.
The Governor has filed a counter-petition for a writ of mandamus, arguing that the operations grants proviso language is unconstitutional because the funding formula amends the statutory scheme of the FEFP. The Governor contends that this Court need not rule on the Senate’s writ petition if we determine that the operations grants proviso language in the Act changes or amends existing law on a sub- *631 jeet other than appropriations in violation of the one subject requirement of article III, section 12 of the Florida Constitution.[4] For the reasons discussed below, we deny the Governor’s petition but recognize that he may pursue his claim of unconstitutionality in circuit court.
Mandamus is the appropriate vehicle for addressing the constitutionality of the provisos only “where the functions of government will be adversely affected without an immediate determination.” Division of Bond Finance v. Smathers, 337 So.2d 805, 807 (Fla.1976); see also Dickinson v. Stone, 251 So.2d 268, 271 (Fla.1971). While this Court has entertained mandamus petitions involving constitutional challenges of provisos, “[ojrdinarily the initial challenge to the constitutionality of a statute should be made before a trial court.” Smathers, 337 So.2d at 807. In Smathers, the Court accepted jurisdiction because both parties agreed that the State Bond Program and the Environmentally Endangered Lands Bond Program were jeopardized by the questionable constitutionality of a proviso and the doubt over the effectiveness of the Governor’s veto. Id. In a footnote we elaborated on these adverse effects to the functions of government, noting that the proviso in question “has caused, and on a daily basis continues to cause the State to be in arrears on a previously executed contract with the government of the United States for the purchase of environmentally endangered lands in the State, and that it is only by grace of a federal extension of time that a default has not been declared.” Id. at 807 n. 1. Indeed, the Court cautioned that “[w]e would hesitate long before accepting jurisdiction in different circumstances.” Id.
We do not find that the instant case involves circumstances of direct and immediate adverse effect and thus deny the Governor’s petition for mandamus. If the governor believes that the appropriations to which these vetoes were directed are unconstitutional, his recourse lies in the filing of a suit for declaratory decree in circuit court.” Martinez, 555 So.2d at 848 (Grimes, J., concurring in part, dissenting in part).
For the foregoing reasons, we grant the Senate’s request for a writ of mandamus, but deny the Governor’s request. We hereby direct the Secretary of State to expunge from the official records of the State the Governor’s veto of the portions of the proviso relating to operations grants. Additionally, we direct the Comptroller to ensure that the expunction of this veto is reflected in the financial operations of the State. Because we believe the parties to this action will fully comply with this opinion, we withhold the formal issuance of the writ of mandamus at this time.
It is so ordered.
SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.

. Governor Bush was permitted to intervene as a respondent.

. The third paragraph of the proviso language provides that schools with 500 or fewer students will receive an $80,000 planning grant; schools with 500 to 1,000 students will receive $100,000; and schools with greater than 1,000 students will receive $120,000.

. Section 236.081, Florida Statutes (Supp. 1998), governs funds for the operation of schools. Subsection (1) describes the procedure to be followed in computing the annual allocation to each district for school operation.

. Article III, section 12 of the Florida Constitution provides that "[l]aws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject.” This Court has explained that two major considerations underlie this one subject requirement: to prevent logrolling in appropriations bills; and to ensure the integrity of the legislative process in substantive lawmaking. See Brown v. Firestone, 382 So.2d 654, 663 (Fla.1980).