HARDING, J.,
dissenting.
I admit that the result advocated by the majority, i.e., to “restor[e] the defendant to competence in a timely and efficient manner so that the court [can] proceed with the resolution of [his] postconviction proceedings,” majority opinion at 18, is both compelling and desirable. However, I must respectfully dissent from the majority as I find that the route to that result crosses forbidden territory.
Under Florida’s Constitution, “[n]o person belonging to one branch [of government] shall exercise any powers appertaining to either of the other branches unless expressly provided [in the Constitution].” Art. II, § 3, Fla. Const. “The separation of powers doctrine is founded on mutual respect of each of the three branches for the constitutional prerogatives and powers of the other branches.” Orr v. Trask, 464 So.2d 131, 135 (Fla.1985). “Judicial intervention in the decision-making function of the executive branch must be restrained in order to support the integrity of the administrative process and to allow the executive branch to carry out its responsibilities as a co-equal branch of government.” Key Haven Associated Enterprises, Inc. v. Board of Trustees, 427 So.2d 153, 157 (Fla.1982).
In light of this separation of powers doctrine, Florida courts have consistently recognized that “[t]he authority of the criminal court to issue orders concerning the conditions and treatment of incarcerated inmates ceases when [the Department of Corrections] receives the inmate into custody.” Moore v. Peavey, 729 So.2d 494, 495 (Fla. 5th DCA 1999) (finding that court lacked jurisdiction to compel DOC to allow visitation privileges to an inmate in DOC custody); see also Singletary v. Duggins, 724 So.2d 1234 (Fla. 3d DCA 1999) (same as to sentencing order prohibiting DOC from cutting inmate’s hair because of his religious beliefs). Based upon this rationale, the Third District Court of Appeal quashed a trial court order requiring DOC to administer particular medical treatment to a confined prisoner. See Moore v. Wilson, 795 So.2d 101 (Fla. 3d DCA 2001). Florida courts have also concluded that trial courts act in derogation of the doctrine of separation of powers when they order an inmate to be placed in a specific treatment facility following an involuntary commitment under chapter 916. See, e.g., Quiala v. State, 659 So.2d 287 (Fla. 3d DCA 1994) (finding that HRS has exclusive authority to determine appropriate facility placement over involuntarily committed defendant); Department of Health & Rehabilitative Servs. v. Pelz, 609 So.2d 155 (Fla. 5th DCA 1992) (same).
Because the relevant statutory provisions do not address the circumstances of an inmate found to be incompetent during postconviction proceedings, the majority concludes that the court acted properly .in directing the treatment of the inmate. See majority op. at 232. However, in light of DOC’s express statutory authority for the “supervisory and protective care, custody, and control of’ adult offenders, see § 945.025, Fla. Stat. (1999), the case law recognizing DOC’s authority over the conditions and treatment of incarcerated in *235 mates, and the overarching doctrine of separation of powers, I believe that the courts have no authority to order that an incompetent inmate be placed in a specific treatment facility.
In the instant case, the psychiatrist at CMHI testified that CMHI is the only mental hospital for inmates within the DOC and it was designed to treat the most severe mental health cases. Further, the psychiatrist stated it was his professional opinion that Watts did not meet the criteria for continued treatment at CMHI and that he did not require treatment in a hospital setting. See majority op. at 229.
Under amended rule 3.851(d)(13), which now governs incompetence to proceed in capital collateral proceedings, a finding that a death-sentenced prisoner is incompetent to proceed gives the court authority to order treatment at a custodial facility under the direct supervision of DOC, to the extent practicable. Thus, even the amended rule does not contemplate the court ordering treatment at a specific facility.
Just as the courts may not dictate the specific conditions that DOC must afford incarcerated inmates nor mandate the facility in which they will be housed, courts should not specify where an incompetent prisoner will be treated. Not only is this a decision best left to DOC, I believe that the constitutional doctrine of separation of powers requires it.
The mental health of a defendant sentenced to death is of concern to the courts under rule 3.851(d), which requires the defendant to be able to assist counsel in the development or resolution of factual matters at issue in postconviction proceedings, and under rule 3.811, which prohibits execution of an insane person. When the Governor is informed that a person under sentence of death may be insane, the Governor is statutorily required to conduct certain proceedings. See § 922.07, Fla. Stat. (2000). If the Governor determines that a death-sentenced person is insane then “the Governor shall have the convicted person committed to a Department of Corrections mental health treatment facility.” Id. § 922.07(3) (emphasis added). Moreover, the statute requires that the person “be kept there until the facility administrator determines that he or she has been restored to sanity.” Id. § 922.07(4).
Thus, it is the responsibility of the executive branch to provide treatment where needed to allow the judicial process to proceed. If the executive branch fails in this regard and the defendant remains incompetent, then the judicial process will come to a standstill. The executive branch bears the responsibility for any failure to adequately treat the defendant. I see no compelling reason to cross the separation of powers boundaries to “speed up” the process.
However, because this is an issue which concerns more than one branch of government, I believe the better course is to call upon the Legislature and Governor to resolve this matter so that such cases can be resolved in a fair and timely manner.